**STATE OF KANSAS, ex rel. Ron TODD, Commissioner of Insurance of the State of Kansas, Plaintiff–Appellant,**

v.

**UNITED STATES of America, et al., Defendants–Appellees.**

No. 92–3203.

United States Court of Appeals, Tenth Circuit.

June 22, 1993.

John J. Knoll, Atty., Office of the Atty. Gen., State of Kan. (John W. Campbell, Deputy Atty. Gen., State of Kan., Robert T. Stephan, Atty. Gen., State of Kan., on brief), for plaintiff-appellant.

Thomas M. Bondy, Atty., Appellate Staff Civil Div., Dept. of Justice (Stuart M. Gerson, Asst. Atty., Gen., Lee Thompson, U.S. Atty., Robert S. Greenspan, Atty., Appellate Staff Civil Div., Dept. of Justice, with him on brief), for defendants-appellees.

Before MOORE, Circuit Judge, MCWILLIAMS, Senior Circuit Judge, and WOOD, JR., Senior Circuit Judge.[*]

HARLINGTON WOOD, Jr., Senior Circuit Judge.

The state of Kansas objects to recent regulations, 7 C.F.R. §§ 400.351–52, promulgated by the Federal Crop Insurance Corporation ("FCIC") under the Federal Crop Insurance Act, 7 U.S.C. §§ 1501–20, that preempt state laws and regulations which are inconsistent with the FCIC's terms and conditions in its insurance policies, including contracts insured or reinsured by the FCIC. The district court found the FCIC did not exceed its statutory authority in promulgating the regulations. The court found the administrative record showed the FCIC's adoption of the regulations was not arbitrary or capricious. Because we agree with the district court, we affirm.

## I. BACKGROUND

The Federal Crop Insurance Act was enacted in 1938 as part of President Franklin Delano Roosevelt's New Deal legislation to rescue and preserve agriculture in order to restore it to its previous position of strength in the national economy. *See generally* James T. Graves, Comment, *Federal Crop Insurance: An Investment in Disappointment??*, 7 Univ. of Kan.L.Rev. 361 (1959); Wayne Rasmussen, *The New Deal & Its Legacy: Agricultural Policies after Fifty Years*, 68 Minn.L.Rev. 353 (1983). Congress significantly expanded the federal crop insurance program in 1980, and the program remains today "one of a panoply of government programs designed to encourage, by subsidy if necessary, the nation's agricultural business." *R & R Farm Enters., Inc. v. Federal Crop Ins. Corp.*, 788 F.2d 1148, 1154 (5th Cir.1986). Its express purpose is "to promote the national welfare by improving the economic stability of agriculture through a system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502.

The FCIC, a wholly government-owned corporate body, is an agency within the Department of Agriculture designated by Congress to implement the crop insurance program. *Id.* § 1503. The FCIC has "such powers as may be necessary or appropriate for the exercise of the powers herein specifically conferred upon the [FCIC] and all such incidental powers as are customary in corporations generally." *Id.* § 1506(j). The Secretary of Agriculture and the FCIC are au-

---

[*] Honorable Harlington Wood, Jr., Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

thorized to issue regulations necessary to carry out the provisions of the Act. *Id.* § 1516(b).

The FCIC provides multiple risk crop insurance by several means. The Act authorizes the FCIC to enter directly into insurance contracts with producers of agricultural commodities. *Id.* § 1508(a). The FCIC may also reinsure crop insurance contracts between producers and private insurance companies. *Id.* § 1508(h). The FCIC will pay the private insurance companies' operating and administrative costs with respect to those policies which the FCIC reinsures. *Id.*

In 1980, the changes to the Act were designed in large part to increase participation in the crop insurance program by producers because increased participation was deemed essential for the program's success. H.R. No. 430, 96th Cong., 2d Sess. 11–13 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3068, 3073–75. In order to foster participation, additional premium subsidies were authorized by Congress, and the program was expanded in its geographical area and number of commodities covered by insurance. 7 U.S.C. § 1508. Congress further recognized that in order to achieve its goal of increased participation, the FCIC should make better use of the experience and resources of private insurance companies. Congress wanted to avoid building another huge federal agency when the private sector could help, with the encouragement of federal reinsurance contracts. H.R. No. 430, 96th Cong., 2d Sess. 11–13 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3068, 3073–75. Congress directed the FCIC "to provide reinsurance, to the maximum extent practicable." 7 U.S.C. § 1508(h). *See id.* § 1507(c). Today, more than 85% of the federal insurance for producers of agricultural commodities is through these reinsurance contracts.

■ The FCIC's authority to set "the terms and conditions" of its government insurance contracts in order to carry out the purposes of the Act is plenary, as delegated by Congress. *Id.* § 1516(b); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). Congress specifically provided that "State and local laws or rules shall not apply to contracts or agreements of the [FCIC] or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts or agreements." 7 U.S.C. § 1506(k).

The FCIC relied upon its plenary authority and section 1506(k) of the Act when it promulgated the regulations which preempt state law for both its direct insurance contracts and its reinsurance contracts with private insurance companies. Kansas objects most strongly to the preemption of its law with respect to the reinsured contracts, conceding the FCIC's authority to preempt its law for FCIC directly insured contracts.

The FCIC adopted the regulations because it wanted to clarify its "long standing position on the preemption of inconsistent state laws and regulation" and equalize federal assistance between FCIC directly insured policies and FCIC reinsured policies. 55 Fed.Reg. 4382 (1990). The FCIC found that despite the clear preemption in the Act at section 1506(k) and by the Supreme Court in *Merrill,* 332 U.S. 380, 68 S.Ct. 1, it encountered "frequent occurrences of State agencies requiring changes in federally approved insurance policies to the extent that neighboring policyholders receive differing levels of federal assistance depending on whether they obtain their policy from FCIC or from a reinsured company or depending on whether they live in differing states." 55 Fed.Reg. 4382 (1990). The FCIC found it was paying state taxes on premiums for reinsured contracts which the FCIC is exempt from under 7 U.S.C. § 1511, by virtue of its reimbursement of expenses for private insurance companies on reinsured contracts. Additionally, the indemnities were being subject to garnishment, liens, and attachments under various state laws despite the "Exemption of indemnities from levy" under 7 U.S.C. § 1509.

Kansas filed its complaint approximately eight months after the rules took effect. Kansas seeks a declaratory judgment that the rules are void and a permanent injunction to prevent their being enforced. After both parties indicated there were no material facts in dispute and filed cross-motions for

summary judgment, with the United States also filing a motion in the alternative for judgment on the pleadings, the district court entered judgment for the United States and denied Kansas's motion for summary judgment. For the reasons given below, we affirm.

## II. STANDARD OF REVIEW

■ We review the district court's grant of summary judgment for the United States *de novo. Arkansas–Platte & Gulf v. Van Waters*, 959 F.2d 158, 159 (10th Cir.), *vacated on other grounds*, —— U.S. ——, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992). We must determine if any genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. ANALYSIS

■ The issue before us is whether the FCIC can promulgate regulations preempting state laws "not consistent with the purpose, intent, or authority of the Act," 7 C.F.R. § 400.351, and applicable to insurance policies which are either insured or reinsured by the FCIC. *Id.* We must consider if the FCIC's decision to preempt state law was congressionally authorized, and if the FCIC's decision was a reasonable exercise of its authority. *State Corp. Comm'n v. FCC*, 787 F.2d 1421, 1425 (10th Cir.1986). If a statute gives an agency broad powers to effect the statute's purposes, we cannot limit the agency's power to preempt state law when there is no contrary indication in the statute if the agency reasonably exercised its authority given to it by Congress. *Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). We look at the agency's decision to see if it exceeded statutory authority or was arbitrarily rendered. 5 U.S.C. § 706; *Fidelity Fed. Sav. & Loan Ass'n*, 458 U.S. at 153–54, 102 S.Ct. at 3022. It is well settled that an agency's decision is entitled to deference and a presumption of regularity in its interpretation of a statute, although this does not shield the decision from a thorough review. *Chevron, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778,

2782, 81 L.Ed.2d 694 (1984); *Blum v. Bacon*, 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). On review, however, we are not to substitute our view for the agency's. *Motor Vehicles Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

■ The first step in this preemption issue is to consider if Congress intended to supersede state law with the Federal Crop Insurance Act and its regulations. *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). Congress may also intend to preempt only part of an area covered by a statute and not the entire field. *See Wisconsin Pub. Intervenor v. Mortier*, —— U.S. ——, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991); *Arkansas–Platte & Gulf v. Van Waters*, 959 F.2d 158, 163 (10th Cir.), *vacated on other grounds*, —— U.S. ——, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992). But this focus on Congress's intent is not so fixed that it is dependent on " 'express congressional authorization to displace state law.' " *New York v. FCC*, 486 U.S. 57, 64, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988). As the Supreme Court stated:

> "Instead, the correct focus is on the federal agency that seeks to displace state law and on the proper bounds of its lawful authority to undertake such action. The statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof.... in proper circumstances the agency may determine that its authority is exclusive and pre-empts any state efforts to regulate in the forbidden area."

*Id.* An agency's preemption regulations have no less preemptive effect than statutes. *Fidelity Fed. Sav. & Loan Ass'n*, 458 U.S. at 153, 102 S.Ct. at 3022; *Integrity Management Int'l, Inc. v. Tombs & Sons, Inc*, 836 F.2d 485, 492 (10th Cir.1987).

■ Congress's intention to preempt state law can occur in several different ways. Preemption occurs when Congress expresses a

clear intent to preempt in a federal statute; when there is a conflict between federal and state law; when compliance with both federal and state law is impossible; when there is an implicit barrier in the federal statute to state regulation; when Congress has comprehensively occupied an entire field and leaves no room for state law; or when state law is an obstacle to the objectives and purpose of Congress. *Louisiana Pub. Serv. Comm'n,* 476 U.S. at 368–69, 106 S.Ct. at 1898. The Supremacy Clause of the Art. VI of the Constitution gives Congress the power to preempt state law.

██ The FCIC claims the Federal Crop Insurance Act itself plainly preempts state law regarding federal crop insurance contracts in section 1506(k) of the Act. "State and local laws or rules shall not apply to contracts or agreements of the [FCIC] or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts or agreements." 7 U.S.C. § 1506(k). Kansas maintains though that section only preempts state law with regard to FCIC direct insurance contracts. In the reinsurance situation, according to Kansas, the phrase "contracts or agreements of the [FCIC] or the parties thereto" does not cover the contract between a private insurance company and the agricultural producer which is reinsured by the FCIC in another contract.

The FCIC additionally argues that its decision to preempt state law was a reasonable one that was not arbitrary or capricious. In *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), the FCIC maintains that its preemptive powers were endorsed by the Supreme Court. The FCIC claims the Act must be interpreted to allow preemption in the reinsurance area because the "FCIC has to have the authority to control not only the contractual relationship with its contractors, but it also must control the relationship such contractors have with insureds" in order to carry out its congressional mandate to establish crop insurance uniformly in the United States. 55 Fed.Reg. 23066, 23067–68 (1990). As discussed above

in Section I, the FCIC has found state laws create significant differences between FCIC direct insurance policies and FCIC reinsured policies. Moreover, in 1989 alone, the FCIC paid over fifteen million dollars for reimbursement of state premium taxes which should not have been assessed. 55 Fed.Reg. 4382, 4383 (1990).

We are easily persuaded that the FCIC was correct in its interpretation of the Act and its promulgation of preemption regulations. Kansas concedes its law is preempted with respect to FCIC direct insurance policies, but then seeks to regulate the FCIC reinsured policies by the back door. What Kansas cannot do directly, it is, in essence, trying to do indirectly. We find no rational explanation, based on the statutory scheme, for a distinction between FCIC reinsured policies and FCIC direct insurance policies permitting the state taxing and regulation of one while preempting the other.

As the district court found, in section 1506(k) of the Act, Congress clearly contemplated that the FCIC's reinsurance contracts should be able to provide that inconsistent state law would not be applicable to an insurance contract reinsured by the FCIC just as it was not applicable to a FCIC direct insurance contract. Reinsurance of private insurance contracts is expressly provided for in the Act, 7 U.S.C. §§ 1507(c) & 1508(h). In 1980 when Congress significantly expanded the crop insurance program, it expressly relied upon the private insurance industry and reinsurance contracts in order to achieve greater participation in the program. Congress directed the FCIC to reinsure private insurance policies "to the maximum extent practicable." *Id.;* H.R. No. 430, 96th Cong., 2d Sess. 13–14 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3068, 3076–77.

 Even if Congress did not expressly provide for preemption of state law in private insurance contracts which are reinsured by the FCIC, the FCIC's decision to preempt state law in the reinsurance situation was eminently reasonable. An agency can fill any gap left, implicitly or explicitly, by Congress if within its scope of authority. *New York v. FCC,* 486 U.S. 57, 64, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988); *Chevron,*

*Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). An agency's decision to preempt state law may be upheld when there is no indication that Congress would have disapproved of preemption. *New York v. FCC,* 486 U.S. at 67–69, 108 S.Ct. at 1643–44; *Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 163 n. 17, 102 S.Ct. 3014, 3027 n. 17, 73 L.Ed.2d 664 (1982).

Kansas has not offered convincing authority that indicates Congress intended to allow states to regulate the private crop insurance contracts which are reinsured by the FCIC. Kansas argues that Congress intended to give agricultural producers a choice in crop insurance protection between contracting with the FCIC or a private insurer since the statutory scheme clearly contemplates continued state involvement in the field of crop insurance. But just because the states continue to license and regulate private insurance agents does not suggest congressional intent to establish two separate crop insurance systems, one for the FCIC and one for the states. Instead, the legislative history of the 1980 amendments shows that the FCIC was to increase its use of the private insurance sector in order to maximize the benefits of its federal program and encourage participation by agricultural producers.

■ Under our deferential standard of review, we are not meant to evaluate the merits of the agency's decision. *See Fidelity Fed. Sav. & Loan Ass'n,* 458 U.S. at 169–70, 102 S.Ct. at 3030–31; *State Corp. Comm'n v. FCC,* 787 F.2d 1421, 1426–27 (10th Cir.1986). Kansas makes some sound policy arguments in favor of preempting its law in discreet areas rather than preempting its law entirely under the example of *R & R Farm Enters., Inc. v. Federal Crop Ins. Corp.,* 788 F.2d 1148 (5th Cir.1986). Kansas argues this because it does not believe its law is an obstacle to the fulfillment of the Act's goals or in conflict with congressional intent. *See Louisiana Pub. Serv. Comm'n,* 476 U.S. at 368–69, 106 S.Ct. at 1898. Kansas believes any improper taxing of premiums and garnishment of indemnities, for example, can be resolved on a case by case basis.

But the FCIC is entitled to resolve that the "frequent occurrences" of state laws interfering with its provision of crop insurance warrant a "straight forwarded clarification and declaration of federal preemption which has always existed but seldom been enforced." 55 Fed.Reg. 4382, 4383 (1990). *See Fidelity Fed. Sav. & Loan Ass'n,* 458 U.S. at 169, 102 S.Ct. at 3030, *Blum v. Bacon,* 457 U.S. 132, 145, 102 S.Ct. 2355, 2363, 72 L.Ed.2d 728 (1982); *see also United States v. Shimer,* 367 U.S. 374, 382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961) (deference to agency has been "consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies"). Kansas has not shown us any flaws in the agency's decision-making process other than the outcome it reached. Thus, because the FCIC's decision was clearly a reasonable interpretation of the Act and within its powers conferred by Congress, we do not find it to be arbitrary or capricious. *See Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 700, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984).

■ We have carefully considered the other arguments set forth by Kansas concerning the McCarren–Fergusen Act, 15 U.S.C. §§ 1011–15, Executive Orders 12291, 12372, and 12612, and the Regulatory Flexibility Act, 5 U.S.C. §§ 601–12, but they are without merit. Kansas maintains the McCarren–Ferguson Act requires a presumption against preemption of state insurance law. But the Act expressly does not apply when any act of Congress "specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The Regulatory Flexibility Act does not apply when the head of an agency certifies that a rule or regulation will not affect a substantial number of small business entities. 5 U.S.C. § 605(b). The FCIC published its certification in the Federal Register according to the Act's requirements that the Act did not apply to the regulations here under the Federal Crop Insurance Act. Finally, judicial review is not available for the FCIC's alleged violations of the various Executive Orders, which Kansas concedes in its brief. Nor does Kansas adequately demonstrate how the FCIC's decisions was arbitrarily or capriciously reached because of any

of these alleged violations. The district court properly rejected these arguments as we do on review.

## IV. CONCLUSION

The regulations challenged by the state of Kansas were promulgated by the FCIC as a proper exercise of its statutory authority delegated to it by Congress. Because the regulations are a reasonable action taken by the agency, we affirm the district court's grant of summary judgment for the United States.