IGF INSURANCE COMPANY *v.*
HAT CREEK PARTNERSHIP

01-1267 76 S.W.3d 859

Supreme Court of Arkansas
Opinion delivered June 6, 2002

*Shaver & Smith*, by: *J. Harmon Smith, III*; and *Henke-Bufkin, P.A.*, by: *R. Jefferson Allen* and *W. Kurt Henke*, for appellant.

*Butler, Hicky, Long, & Harris*, by: *Andrea Brock*, for appellee.

TOM GLAZE, Justice. This appeal involves the application and interpretation of Arkansas's statutes pertaining to

the enforceability of an arbitration clause in an insurance contract, *see* Ark. Code Ann. § 16-108-201 (Supp. 2001); jurisdiction is therefore proper under Ark. Sup. Ct. R. 1-2(b)(6).

On February 10, 1999, Hat Creek Partnership purchased from IGF Insurance Company a multiple peril crop insurance policy (MPCI) that covered Hat Creek's crops planted during the 1999 crop year in Cross County, Arkansas. During the early part of March 1999, Hat Creek's growing wheat was totally destroyed by wild geese. Hat Creek notified IGF in mid-March that wildlife had damaged its wheat crop, and on March 26, 1999, Robert Burns, an IGF adjuster, came to Hat Creek's farm to meet with Paul McCain, a representative of the farm. McCain informed Burns that the wheat had not yet been fertilized, but that it needed to be fertilized, if the crop was not damaged to such a degree that it could not be saved. After examining the wheat fields, Burns represented to McCain that the crop was a total loss. Burns then advised McCain that he would be back in a few days to finish up the claim and pay the loss; based on Burns's representations, Hat Creek did not fertilize the wheat crop.

When Burns did not return to the farm, McCain called to advise Burns that some of the wheat was trying to come back. Burns advised McCain not to worry about the crop because it had failed. On April 7, 1999, Burns came back to the farm to complete plant counts in connection with the wheat crop, and on April 8, 1999, Burns met with McCain and informed him, for the first time, that more than 1100 acres of Hat Creek's wheat crop was not insured.

Hat Creek subsequently filed suit against IGF, alleging that IGF had breached the insurance contract and that the company and its agent, Burns, were liable for negligent misrepresentation. The complaint sought $120,000 in losses, and asserted that, due to Burns's representations that the loss would be paid, the wheat was not fertilized. Burns's representations came at a time when fertilization of the wheat was at a critical point, and Hat Creek claimed that, as a result of Burns's statements that the wheat should not be fertilized and no money should be spent on it, Hat Creek lost all

opportunity to salvage any portion of the wheat crop and the crop was a total loss.

IGF filed an answer in which it asked the trial court to stay the action, based on a written agreement to arbitrate contained in the MPCI policy. The arbitration clause read, in pertinent part, as follows:

> 20. Arbitration
>
> (a) If you and we fail to agree on any factual determination, the disagreement will be resolved in accordance with the rules of the American Arbitration Association. Failure to agree with any factual determination made by FCIC must be resolved through the FCIC appeal provisions published at 7 C.F.R. Part 11.

Further, IGF specifically pled that Hat Creek's claims for recovery under state law were preempted and barred by federal regulations, particularly, 7 C.F.R. §§ 400.176 and 400.352. IGF argued that the complaint should be dismissed and referred to binding arbitration.

On March 27, 2000, IGF filed a motion to compel arbitration in which it argued that the arbitration agreement was enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Hat Creek responded by citing Ark. Code Ann. § 16-108-201 (Supp. 2001), under which arbitration agreements contained in insurance contracts are not enforceable against insureds. Hat Creek additionally asserted that arbitration could not be compelled, because the Arkansas Uniform Arbitration Act preempts the FAA by virtue of the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* Hat Creek also contended that the dispute did not arise from the insurance contract, but from representations made by an employee of the insurance company, and as such, IGF should not be allowed to compel Hat Creek to arbitrate the tort action. After a hearing on July 18, 2001, the trial court denied IGF's motion to compel arbitration. IGF brings this appeal from that order.

 The denial of a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.—Civ. 2(a)(12); *Walton v. Lewis*, 337 Ark. 45, 987 S.W.2d 262 (1999); *Terminix*

*Int'l Co. v. Stabbs*, 326 Ark. 239, 930 S.W.2d 345 (1996); *American Ins. Co. v. Cazort*, 316 Ark. 314, 871 S.W.2d 575 (1994). Our review of the trial court's denial of a motion to compel arbitration is *de novo. Showmethemoney Check Cashers v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000); *Walton v. Lewis, supra.*

■ ■ For its first point on appeal, IGF contends that the FAA, rather than the Arkansas Uniform Arbitration Act, applies to this dispute and calls for arbitration between the parties. IGF notes the strong federal preference for arbitration. In *Allied-Bruce Terminex Companies, Inc. v. Dobson*, 513 U.S. 265 (1995), the Supreme Court stated that "the basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate," and held that the Act was to have an "expansive interpretation" in order to reach all transactions or contracts that fall within the broad scope of Congressional powers relating to interstate commerce. Further, 9 U.S.C. § 2 states the following:

> *A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract* or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

(Emphasis added.) The Supreme Court has held that insurance policies are contracts "involving commerce" and are therefore subject to the Federal Arbitration Act. *See United States Dep't of the Treasury v. Fabe*, 508 U.S. 491 (1993). Thus, IGF asserts, the arbitration clause in the MPCI policy issued to Hat Creek — a "contract evidencing a transaction involving commerce" — was enforceable, and the trial court should have granted its motion to compel arbitration.

Hat Creek responds that the Arkansas General Assembly has specifically exempted insurance policies from the kinds of contracts containing arbitration clauses that are generally held to be enforceable. Notably, Ark. Code Ann. § 16-108-201 (Supp. 2001) provides as follows:

(b) A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract; provided, that *this subsection shall have no application to* personal injury or *tort matters*, employer-employee disputes, *nor to any insured* or beneficiary *under any insurance policy* or annuity contract.

§ 16-108-201(b) (emphasis added). Hat Creek argues that, because its lawsuit was brought pursuant to its insurance policy with IGF, and because the complaint also contained tort allegations, the arbitration clause was not enforceable.

Additionally, Hat Creek contends that under the federal McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, state statutes regulating insurance policies are superior to federal statutes. The McCarran-Ferguson Act was enacted in 1945 in response to the Supreme Court's decision in *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533 (1944), wherein the Court held that an insurance company that conducted a substantial part of its business across state lines was engaged in interstate commerce and therefore was subject to federal antitrust laws. Prior to that time, "it had been assumed that issuing a policy of insurance [was] not a transaction of commerce subject to federal regulation" *United States Department of the Treasury v. Fabe*, 508 U.S. 491, 499 (1993) (citations omitted), and therefore the States "enjoyed a virtually exclusive domain over the insurance industry." *Id.* However, after the Court's decision in *South-Eastern Underwriters*, Congress enacted the McCarran-Ferguson Act in order "to restore the supremacy of the States in the realm of insurance regulation." *Fabe*, 508 U.S. at 500. The *Fabe* Court stated that Congress "[made] its mission very clear" with the first section of the Act, which provides that "Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States." 15 U.S.C. § 1011. *See Fabe*, 508 U.S. at 500.

■ After the Congressional declaration of McCarran-Ferguson's policy, the Act provides, in relevant part, as follows:

(a) State regulation

The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) Federal regulation

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance[.][1]

15 U.S.C. § 1012. Thus, the McCarran-Ferguson Act bars the application of a federal statute if (1) the federal statute does not specifically relate to the business of insurance; (2) a state statute has been enacted for the purpose of regulating the business of insurance; and (3) the federal statute would invalidate, impair, or supersede the state statute. *BankOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089 (10th Cir. 1999) (citing *Fabe, supra*).

In the present case, the parties initially raise arguments about the applicability of the Federal Arbitration Act: IGF contends that the Act supersedes the Arkansas arbitration statutes, while Hat Creek asserts that the Act does not specifically relate to the business of insurance, and the Arkansas statutes therefore control. However, the federal act that forms the crux of this case is the Federal Crop Insurance Act, 7 U.S.C. § 1501 *et seq.*, the act under which IGF reinsured its crop insurance policy with the Federal Crop Insurance Corporation. *The crop insurance policy issued to Hat Creek by IGF* states prominently the following:

This insurance policy *is reinsured by the Federal Crop Insurance Corporation (FCIC) under the provisions of the Federal Crop Insurance Act,* as amended (7 U.S.C. 1501 *et seq.*). *All provisions of the policy*

---

[1] The Act then goes on to provide that certain acts of Congress (specifically, the Sherman Act, the Clayton Act, and the Federal Trade Commission Act, as amended [15 U.S.C.A. 41 *et seq.*]), "shall be applicable to the business of insurance to the extent that such business is not regulated by State law."

*and rights and responsibilities of the parties are specifically subject to the Act.* The provisions of the policy are published in the *Federal Register* and codified in chapter IV of title 7 of the Code of Federal Regulations (CFR) under the Federal Register Act (44 U.S.C. 1501 *et seq.*), and may not be waived or varied in any way by the crop insurance agent or any other agent or employee of FCIC or the company. In the event we cannot pay your loss, your claim will be settled in accordance with the provisions of this policy and paid by FCIC. No state guarantee fund will be liable for your loss. (Emphasis added.)

This policy language is taken from 7 C.F.R. § 457.8, which provides that an "[a]pplication for insurance on a form prescribed by the Corporation, or approved by the Corporation, must be made by any person who wishes to participate in the [federal crop insurance] program, to cover such person's share in the insured crop as landlord, owner-operator, crop ownership interest, or tenant." 7 C.F.R. § 457.8(a). This section then goes on to set out the language used in federal crop insurance policies, such as the one Hat Creek purchased from IGF in this case.

■ ■ Because the Federal Crop Insurance Act specifically relates to the business of insurance, the McCarran–Ferguson Act is inapplicable, and the federal insurance statute preempts the Arkansas arbitration statute. This supersession of state law by the federal Act was recognized in a case from the Tenth Circuit, *State of Kansas ex rel. Todd v. United States*, 995 F.2d 1505 (10th Cir. 1993). In that case, the State of Kansas challenged the ability of the FCIC to promulgate regulations preempting state laws "not consistent with the purpose, intent, or authority of the Act," 7 C.F.R. § 400.351, and applicable to insurance policies which are either insured or reinsured by the FCIC. The *Todd* court noted that the express purpose of the Federal Crop Insurance Act was to "promote the national welfare by improving the economic stability of agriculture through a system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." *Id.* (citing 7 U.S.C. § 1502). The Tenth Circuit continued its discussion of the purpose and policy of the FCIC, stating that, under § 1516(b), the FCIC's authority to set "the terms and conditions" of its government insurance contracts in

order to carry out the purposes of the Act is plenary, as delegated by Congress. The FCIC relied upon its plenary authority and section 1506(k)[2] of the Act when it promulgated the regulations which preempt state law for both its direct insurance contracts and its reinsurance contracts with private insurance companies. In addition, the *Todd* court pointed out, the FCIC adopted the regulations because it wanted to clarify its "long standing position on the preemption of inconsistent state laws and regulation" and equalize federal assistance between FCIC directly insured policies and FCIC reinsured policies. *Todd*, 955 S.2d at 1508 (citing 55 Fed. Reg. 4382 (1990)).

■■ The court in *Todd* then proceeded to analyze whether or not Congress intended to supersede state laws with the FCIA and its attendant regulations. Noting first that Congress may intend to supersede all or only a part of a state's laws, the court inquired first into whether or not Congress expressed an intention to preempt state law. Preemption occurs (1) when Congress expresses a clear intent to preempt in a federal statute; (2) when there is a conflict between federal and state law; (3) when compliance with both federal and state law is impossible; (4) when there is an implicit barrier in the federal statute to state regulation; (5) when Congress has comprehensively occupied an entire field and leaves no room for state law; or (6) when state law is an obstacle to the objectives and purpose of Congress. *Id.* at 1510 (citing *Louisiana Pub. Serv. Comm'n v. Federal Communication Comm'n*, 476 U.S. 355 (1986). The *Todd* court agreed with the FCIC's assertion that *the FCIA explicitly preempts state law regarding federal crop insurance contracts in § 1506(k)* (now § 1506(l)). That section provides that "[s]tate and local laws or rules shall not apply to contracts or agreements of the [FCIC] or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts or agreements." *See also Meyer v. Conlon*, 162 F.3d 1264 (10th Cir. 1998) (holding that state law applies to FCIA contracts, with two exceptions: (1) when FCIC

---

[2] Following amendments to the FCIA, 7 U.S.C. § 1506(k) is now codified at § 1506(l).

contracts provide that state law does not apply, and (2) when state law is inconsistent with FCIC contracts).

Further, 7 C.F.R. § 400.352 states specifically that "[n]o state or local governmental body . . . shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation." Thus, it is clear that Congress contemplated that the FCIC's reinsurance contracts should be able to provide that state law would be inapplicable to an insurance contract reinsured by the FCIC. The Arkansas statute purporting to prevent the enforceability of arbitration clauses in insurance contracts "directly or indirectly affect[s] or govern[s]" the crop insurance contract authorized by the FCIC, and it is therefore inconsistent with, and preempted by, the federal statute. The trial court erred in concluding otherwise, and we reverse its denial of IGF's motion to compel arbitration.

Hat Creek raises two additional arguments regarding the enforceability of the arbitration clause, contending that the clause is narrow and the controversy between Hat Creek and IGF is outside its scope, and that the arbitration clause is unenforceable as it is contained in an adhesion contract. We decline to reach either of these issues, because it is not apparent from the record that the trial court considered and ruled on these questions in reaching its decision, which, as just noted, must be reversed in any event.

In sum, the McCarran–Ferguson Act does not apply, and the Federal Crop Insurance Act's provisions mandating arbitration clauses in federal crop reinsurance policies preempts the Arkansas statute that would ordinarily render the arbitration clause unenforceable. The trial court is therefore reversed and the case remanded.

CORBIN and HANNAH, JJ., concurs.

DONALD L. CORBIN, Justice, concurring. I agree that the federal law at issue in this case, the Federal Crop Insurance Act (FCIA), preempts our state law's prohibition against

enforcing arbitration clauses contained in insurance policies, set out in Ark. Code Ann. § 16-108-201(b) (Supp. 2001). I therefore concur in the majority's conclusion that the trial court erred in denying IGF's motion to compel arbitration. I write separately to emphasize that neither the contract nor the applicable federal regulations require the parties to arbitrate anything other than disagreements on "any factual determinations." From my review of the federal case law on this issue, I believe that the parties must first submit to arbitration any factual determinations, but that Hat Creek may thereafter pursue its state-law tort claims in the circuit court.

Section 20(a) of the insurance contract in this case provides in pertinent part:

> If you and we fail to agree on *any factual determination*, the disagreement will be resolved in accordance with the rules of the American Arbitration Association. [Emphasis added.]

This contract provision is codified as 7 C.F.R. § 457.8 (2002). Clearly, from its face, this clause only requires arbitration of disagreements on factual determinations; it does not require the parties to arbitrate any and all disputes. This conclusion finds support in a related federal regulation, 7 C.F.R. § 400.176 (2002), which provides in pertinent part:

> (b) *No policy of insurance reinsured by the [Federal Crop Insurance] Corporation* and no claim, settlement, or adjustment action with respect to any such policy *shall provide a basis for a claim of damages against the Company issuing such policy*, other than damages to which the Corporation would be liable under federal law if the Corporation had issued the policy of insurance under its direct writing program, *unless the claimant establishes in a court of competent jurisdiction*, or to the satisfaction of the Corporation in the event of a settlement, *that such damages were caused by the culpable failure of the Company to substantially comply with the Corporation's procedures or instructions in the handling of the claim or in servicing the insured's policy*, or *unless the Company or its agents were acting outside the scope of their authority (apparent or implied) in performing or omitting the actions claimed as a basis for the damage action.* [Emphasis added.]

Indeed, two recent federal decisions have acknowledged that Congress did not intend the foregoing arbitration provision to extin-

guish state-law causes of action arising from tortious conduct by private companies selling reinsurance contracts approved by the Federal Crop Insurance Corporation (FCIC).

In *Nobles v. Rural Community Ins. Servs.*, 122 F. Supp. 2d 1290 (M.D. Ala. 2000) the federal district court determined that under the FCIA and the FCIC's regulations, the insured farmer, Nobles, was required to arbitrate the factual determination whether its 5,000 acres were covered by the policy. Following arbitration, and assuming that Nobles was not satisfied with the arbitration result, it could pursue its remaining tort claims, including claims for misrepresentation and bad faith, in court. The court explained:

> Using its rulemaking powers, [FCIC] has dictated the terms of the insurance contracts issued by Defendant and other companies. The terms and conditions preempt any contrary state laws that would apply to other insurance contracts normally issued by private insurance companies. At the same time, however, *[FCIC] has never intended to extinguish state law causes of action that may arise from tortious conduct by private companies selling [FCIC]-approved reinsurance contracts.*

*Id.* at 1294 (citations omitted) (emphasis added). *See also Williams Farms of Homestead, Inc., v. Rain and Hail Ins. Servs., Inc.*, 121 F.3d 630 (11th Cir. 1997). Relying primarily on section 400.176(b), set out above, the district court concluded that "by their very terms, the relevant regulations expressly envision litigation." *Nobles*, 122 F. Supp. 2d at 1294. The court held:

> Thus, there is no doubt that Congress has not preempted lawsuits based on state law claims against private insurance providers. But that does not mean that Congress did not intend for the parties to have some factual determinations and disagreements resolved through arbitration.

*Id.* at 1295. Based on the foregoing provisions, the district court concluded that Nobles was required to arbitrate the factual determination whether its 5,000 acres were covered, and that the arbitration must occur first, due to the strong federal policy favoring arbitration. After that dispute is resolved, the court concluded that

Nobles could pursue its state-law tort claims against the insurer. To this end, the district court retained jurisdiction over the suit.

The same conclusion was reached by the Florida district court in *Ledford Farms, Inc. v. Fireman's Fund Ins. Co.*, 184 F. Supp. 2d 1242 (S.D. Fla. 2001). There, Ledford submitted a claim to Fireman's, alleging that rain had destroyed its crop. Fireman's denied coverage on the ground that Ledford had failed to replant the crop, although it was practical to do so. Ledford contended that the issue whether it was practical for it to replant was a legal determination, not a factual determination and, thus, was not subject to arbitration. The district court disagreed and granted Fireman's motion to compel arbitration. The court held, however, that the arbitration clause was not applicable to all disputes between the parties. The court explained:

> Fireman's Fund denied coverage on the ground that it was practical for Ledford to replant its fresh market bean crop. Such a conclusion is clearly a factual determination. Accordingly, any dispute concerning the propriety of that conclusion is subject to binding arbitration. *The arbitration clause, however, is not an absolute bar to suit. Rather, the arbitration clause is a condition, contained in every [multi-peril crop insurance] policy, that must be satisfied before an insured can commence legal action.*

*Id.* at 1245 (emphasis added). The contract condition referred to by the Florida district court is the same condition present in the policy at issue here, section 25(a), which provides: "You may not bring legal action against us *unless* you have complied with all of the policy provisions." (Emphasis added.) The district court concluded that this provision "contemplates litigation." *Id.* at 1244.

In the present case, IGF denied Hat Creek's claim on the ground that 1,100 of the 1,200 acres damaged were not insured under the policy. This is a factual determination that must be submitted to binding arbitration. Given the strong policy favoring arbitration, this determination must be made first. Thereafter, however, Hat Creek may pursue its state claims for negligent misrepresentation and deceit in the circuit court, as those claims are beyond the narrow scope of the arbitration clause. Accordingly, I conclude that although arbitration must take place first, Hat Creek may pursue its tort claims against IGF once arbitration is com-

pleted and it has complied with all of the policy provisions. Both the federal case law and the plain language of the contract support this conclusion.

HANNAH, J., joins in this concurrence.