2011 Ark. 490

**SOUTHERN PIONEER LIFE INSURANCE CO., Appellant**

v.

**Danny THOMAS and Irma Thomas, Individually, and On Behalf of a Class of Similarly Situated Persons, Appellees.**

No. 11–426.

Supreme Court of Arkansas.

Nov. 17, 2011.

Robert F. Thompson III, Paragould, John Albert Smyth III, Birmingham, AL, for appellant.

Brian Douglas Dover, Jonesboro, J. Clay Fuller, Columbus, GA, C. Lance Gould, Montgomery, AL, for appellee.

KAREN R. BAKER, Justice.

Appellant Southern Pioneer Life Insurance Co. ("Southern Pioneer") appeals the Greene County Circuit Court's denial of its motion to compel arbitration. An order denying a motion to compel arbitration is an immediately appealable order. Ark. R.App. P.–2(a)(12) (2011); Ark.Code Ann. § 16–108–201 (Repl.2006); *see IGF Ins. Co. v. Hat Creek P'ship*, 349 Ark. 133, 76 S.W.3d 859 (2002). The circuit court denied Southern Pioneer's motion to compel arbitration after finding that the dispute was governed by Arkansas Code Annotated section 16–108–201(b), thereby preventing Southern Pioneer, as an insurer, from compelling appellees Danny and Irma Thomas to arbitrate a dispute under an insurance policy. Southern Pioneer filed this interlocutory appeal asserting that the circuit court erred in denying its motion to compel arbitration because (1) the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs the arbitrability of this matter; (2) the Arkansas Uniform Arbitration Act ("AUAA") does not preclude enforcement of the contract of arbitration; and (3) principles of equitable estoppel permit Southern Pioneer to compel arbitration. We affirm.

On February 19, 2007, appellees executed a credit application ("Application") and a retail installment contract ("RIC") for the purchase of a 2006 Chrysler PT Cruiser, which was financed by Chrysler Financial. The Application contained an arbitration agreement, which broadly states in pertinent part:

Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this Contract of Arbitration or the arbitrability of any issue) between us or our employees, agents, successors or assigns, which arise out of or relate to

this Application, an installment sale contract or lease agreement, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Application and Contract of Arbitration) shall, at the election of either of us (or the election of any such third party), be received by a neutral, binding arbitration and not by a court action.

The RIC provided an option for appellees to purchase credit-life insurance coverage with Southern Pioneer by checking a box on the face of the form. The entire premium for the optional insurance coverage amounted to $1,450.54 and was financed with the purchase price of the vehicle into the life of the loan. The loan was set to expire on February 19, 2013, but appellees paid the loan off early on July 19, 2007.

On July 8, 2009, appellees, on their own behalf and on behalf of other putative class members, brought suit seeking the refund of unearned credit-life insurance premiums from the date they paid off their loan until the original maturity date of the loan, when the insurance was set to terminate. Southern Pioneer filed a motion to compel arbitration on September 23, 2010, attempting to force appellees to arbitrate their claims under the terms of the arbitration agreement that was a part of the Application. Southern Pioneer asserted that the suit involved a breach of the RIC and not the insurance contract. After a hearing the circuit court denied the motion to compel arbitration.

■ Appellees' complaint alleged a breach of an insurance contract based on Southern Pioneer's failure to refund unearned premiums. On appeal, Southern Pioneer urges that this claim "arise[s] out of or relate[s] to [the] Application, an installment sale contract or lease agreement, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Application and Contract of Arbitration)[.]" Further, Southern Pioneer points out that the language of the Application's arbitration agreement is broad and clearly evidences the intent of the parties to arbitrate disputes arising between the signatories and potential third parties. Southern Pioneer asserts that all of the claims for which appellees seek redress arise from the terms of the RIC, which developed from the Application. Appellees counter that all of their claims arise out of the insurance contract, which is not subject to arbitration under the AUAA and the McCarran–Ferguson Act, 15 U.S.C. §§ 1011 et seq. Arkansas Code Annotated section 16–108–201(b) provides that an insurer cannot compel an insured to arbitrate claims that arise under the insurance policy or contract.

■ We review a circuit court's order denying a motion to compel arbitration de novo on the record. *Hat Creek, supra.* Arbitration is simply a matter of contract between parties. *Ruth R. Remmel Revocable Trust v. Regions Fin. Corp.,* 369 Ark. 392, 255 S.W.3d 453 (2007). The question of whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles. *Tyson Foods, Inc. v. Archer,* 356 Ark. 136, 147 S.W.3d 681 (2004).

■ The FAA requires the enforcement of an arbitration agreement upon proof (1) that a written agreement to arbitrate exists, and (2) that the written agreement is contained within a contract involving "commerce." 9 U.S.C. § 2. Once a transaction in litigation is found to meet the FAA standards (i.e. "involve commerce"), courts must generally enforce the arbitration clauses. *See Doctor's Assocs. v. Casarotto,*

517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). There is no dispute that the transaction here involves interstate commerce. However, the FAA's mandate conflicts with a provision in the AUAA because the AUAA provides that arbitration agreements contained in insurance contracts are unenforceable against insureds and beneficiaries. *See* Ark.Code Ann. § 16–108–201(b)(2); *see also Hat Creek,* 349 Ark. at 137, 76 S.W.3d at 862. Arkansas Code Annotated section 16–108–201(b) provided, at the time this cause of action arose, as follows:

> (1) A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract.

> (2) This subsection shall have no application to personal injury or tort matters, employer-employee disputes, *nor to any insured or beneficiary under any insurance policy* or annuity contract.

Ark.Code Ann. § 16–108–201(b) (Repl. 2006) (emphasis supplied).[1]

The FAA would ordinarily preempt conflicting state law, but the McCarran–Ferguson Act operates to bar application of the FAA and leave the regulation of the insurance industry to the states:

> No Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insur-

ance ... unless such Act specifically relates to the business of insurance[.]

15 U.S.C. § 1012(b). The McCarran–Ferguson Act preserves state regulation of the insurance industry from any federal intrusion, subject only to certain express exceptions.[2] *Baldwin–United Corp. v. Garner,* 283 Ark. 385, 392, 678 S.W.2d 754, 757 (1984) (citing *Prudential v. Benjamin,* 328 U.S. 408, 420–30, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946)). Under the McCarran–Ferguson Act, reverse preemption occurs if (1) the federal statute at issue does not specifically relate to the business of insurance; (2) the state law was enacted for the purpose of regulating the business of insurance; and (3) application of the federal statute will invalidate, impair, or supersede the state law. *United States Dep't of the Treasury v. Fabe,* 508 U.S. 491, 500–01, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993); *see also Standard Sec. Life Ins. Co. of N.Y. v. West,* 267 F.3d 821 (8th Cir.2001). Reverse preemption requires satisfaction of each of these factors.

The FAA does not specifically relate to the business of insurance; therefore, the first factor is present.

As to the second factor under *Fabe,* the Supreme Court has provided a framework for resolving whether state law "regulates insurance." *UNUM Life Ins. Co. of Am. v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). First, the court must consider whether "from a 'common-sense view of the matter,' the contested prescription regulates insurance." *Id.* at 367, 119 S.Ct. 1380 (quoting *Metro. Life*

---

1. The general assembly replaced Ark.Code Ann. § 16–108–201 in the 2011 legislative session.

2. There is an important exception to the McCarran–Ferguson Act. Notably, the McCarran–Ferguson Act does not permit preemption where the federal law "specifically relates to the business of insurance." *See* 15 U.S.C.

§ 1012(b); *see Hat Creek,* 349 Ark. at 143, 76 S.W.3d at 866 (stating that "the Federal Crop Insurance Act's provisions mandating arbitration clauses in federal-crop-reinsurance policies preempts the Arkansas statute that would ordinarily render the arbitration clause unenforceable"). No such exception applies here.

*Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)). Then, we must consider three factors:

> [F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.

*Id.; see also Selmon v. Metro. Life Ins. Co.*, 372 Ark. 420, 277 S.W.3d 196 (2008). While the three factors are relevant, they are merely guideposts, and all three need not be satisfied to save a state law from preemption. *Ward*, 526 U.S. at 374, 119 S.Ct. 1380.

Here, common sense dictates that section 16–108–201(b)(2) regulates the business of insurance by exempting arbitration agreements in insurance contracts from enforcement.

Next, we turn to the three factors of the framework. First, section 16–108–201(b)(2) affects policyholder risk by transferring or spreading the risk "by introducing the possibility of jury verdicts into the process for resolving disputed claims." *West*, 267 F.3d at 823. Second, section 16–108–201(b)(2) regulates an integral part of the relationship between an insurer and insured by invalidating an otherwise mandatory insurance-contract term that would allow either party to compel arbitration of disputes arising thereunder. *Id.* Third, section 16–108–201(b)(2) is *not* limited to entities within the insurance industry as it also exempts tort and employment claims from arbitration. However, all three factors do not need to be satisfied to resolve this question, and we hold that section 16–108–201(b)(2) regulates insurance within the meaning of the McCarran–Ferguson Act.

The third and final factor under *Fabe*, is whether application of the federal statute will invalidate, impair, or supersede the state law. Application of the FAA to enforce the arbitration agreement between Southern Pioneer and appellees would clearly invalidate the operation of section 16–108–201(b)(2). Accordingly, we conclude that the McCarran–Ferguson Act does not allow the FAA to preempt Arkansas Code Annotated section 16–108–201(b)(2), and section 16–108–201(b)(2) prohibits arbitration under these facts.

For its final argument, Southern Pioneer asserts that principles of equitable estoppel should permit Southern Pioneer to compel arbitration. We have concluded that state statutory law does not permit Southern Pioneer to compel arbitration directly, and we will not permit a party to do indirectly that which state law prohibits it from doing directly. *See Simmons v. Estate of Wilkinson*, 318 Ark. 371, 885 S.W.2d 673 (1994).

We conclude that the circuit court did not err in denying Southern Pioneer's motion to compel arbitration.

Affirmed.

CORBIN, DANIELSON, and HENRY, JJ., concur.

COURTNEY HUDSON HENRY, Justice, concurring.

I concur with the majority's opinion that the McCarran–Ferguson Act (MFA) reverse-preempts the Federal Arbitration Act (FAA) and that the MFA three-pronged test articulated in *United States Department of the Treasury v. Fabe*, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), is satisfied. In this instance, the MFA trumps the FAA, and our state statute governs. *See Lawson v. Life of the S. Ins. Co.*, No. 4:06–CV–42 (WLS), 2010 WL 1416551 (M.D.Ga. Mar. 31, 2010),

*aff'd on other grounds, Lawson v. Life of the S. Ins. Co.,* 648 F.3d 1166 (11th Cir. 2011). However, the analysis does not end there. I write separately to emphasize that, after concluding that the MFA reverse-preempts the FAA, we must apply Arkansas Code Annotated section 16–108–201(b) (Repl.2006), to the facts of this case.

In our review of section 16–108–201(b) in *IGF Insurance Co. v. Hat Creek Partnership,* 349 Ark. 133, 76 S.W.3d 859 (2002), this court noted that a specific federal statute governing crop insurance allowed the arbitration of disputes relating to crop insurance. This court observed that, but for the specific federal statute dealing with arbitration and crop insurance, the MFA would have allowed the Arkansas Uniform Arbitration Act (AUAA) to prevent the enforcement of the arbitration provision at issue. We held that "the [MFA] does not apply, and the Federal Crop Insurance Act's provisions mandating arbitration clauses in federal crop reinsurance policies preempts *the Arkansas statute that would ordinarily render the arbitration clause unenforceable." Id.* at 143, 76 S.W.3d at 866 (emphasis added). Thus, the present case is distinguishable from *Hat Creek* because no federal statute preempts section 16–108–201.

Our inquiry must focus on the language of our own particular statute. Section 16–18–201(b) provides:

> (b)(1) A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract.
>
> (2) This subsection shall have no application to personal injury or tort matters, employer-employee disputes, nor to

> any insured or beneficiary under any insurance policy or annuity contract.

Ark.Code Ann. § 16–108–201(b) (emphasis added). Here, the Arkansas General Assembly has specifically exempted insurance policies from contracts containing arbitration clauses that are generally held to be enforceable. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Vanderpool v. Fidelity & Cas. Ins. Co.,* 327 Ark. 407, 939 S.W.2d 280 (1997). The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature. *Id.*

I agree with the circuit court's ruling that section 16–108–201(b) governs this dispute. Based on the plain language of section 16–108–201, arbitration does not apply to "any insured or beneficiary under any insurance policy[.]" *Id.* "Any insurance policy" includes appellees' credit-life insurance policy from Southern Pioneer for which they paid a single one-time premium of $1450.54, as reflected in the retail-installment-sales contract (RISC) containing the arbitration clause. I would hold that section 16–108–201 dictates that Southern Pioneer cannot compel arbitration of the insurance matter indirectly through the arbitration clause of the RISC.

This interpretation comports with the legislative intent of section 16–108–201. This court has held that it will not interpret a statute to yield an absurd result that is contrary to legislative intent. *Hartford Fire Ins. Co. v. Sauer,* 358 Ark. 89, 186 S.W.3d 229 (2004). Here, the General Assembly's intent was made quite clear by the emergency clause in Act 616 of 1981 [1] that the Act "shall have no appli-

---

1. The emergency clause of Act 616 of 1981 reads:

cation to ... any insured or beneficiary under any|₁₀insurance policy[.]" This language has not changed since the enactment of the AUAA in Act 260 of 1969. Thus, section 16–108–201 expresses the public policy of Arkansas that disputes relating to "any insurance polic[ies]" are not arbitrable. *Id.* For these reasons, I would affirm the circuit court's ruling on this basis.

CORBIN and DANIELSON, JJ., join.

SECTION 3. Emergency. It has been found and is declared by the General Assembly of Arkansas that doubt and confusion exist as to the applicability of the Uniform Arbitration Act to certain disputes; that it is imperative that such doubt and confusion be resolved at once; and that said doubt and confusion can be resolved only through enactment of this bill. Therefore, an emergency is declared to exist, and this Act being necessary for the public peace, health and safety shall take effect and be in force from the date of its approval.

APPROVED: March 23, 1981.