OPINION OF THE COURT
Marcy S. Friedman, J.
In this action, plaintiffs All Metro Health Care Services, Inc. (AMHC) and the 1818 Mezzanine Fund II, L.P. (1818 Fund) seek damages for defendants’ alleged fraud in connection with the sale to AMHC of All Metro Aids, Inc. (All Metro Aids), a corporation engaged in the business of home health care. Plaintiffs AMHC and 1818 Fund move to discontinue the action so they can proceed with arbitration of their claims against defendant Scott R. Mixer, and to compel arbitration of all of Mixer’s claims against plaintiffs.
The following facts are not disputed: AMHC purchased All Metro Aids with financing provided by 1818 Fund. Defendant Glenn Edwards was the sole shareholder of All Metro Aids at the time of sale. Defendant Mixer was a senior manager of All Metro Aids who, with others, organized AMHC in order to effectuate a management buy-out and to purchase the stock of All Metro Aids. (Mixer counterclaims 1i 12.) Mixer was a major shareholder of AMHC (id.) and its president. Edwards and All Metro Aids entered into a stock purchase agreement with AMHC, dated October 9, 2003. The agreement was executed by
*865 Edwards individually and as sole shareholder of All Metro Aids. Edwards also signed as chief executive officer and president of a number of related companies. Mixer signed as chief executive officer and president of AMHC and specified subsidiaries. He also signed “Individually As to Section 27.0 of this Stock Purchase Agreement.” Section 27.0, entitled “Representation of Mixer,” provided as follows:
“Mixer represents that he does not have actual knowledge as of the Execution Date of any fact which causes or which could cause a breach of any of Seller’s representations and warranties contained in Section 26, except as to Section 26.1 [regarding stock ownership]. Mixer will give prompt written notice to the Seller prior to the Effective Date of any fact of which Mixer has actual knowledge which causes or which could cause a breach of any of Seller’s representations and warranties contained in Section 26.”
Section 26 sets forth representations made by Edwards and All Metro Aids “[a]s a material inducement to Buyer to enter into this Stock Purchase Agreement.” These representations included representations that All Metro Aids’ financial statement was correct in all material respects and fairly presented its financial condition, and that All Metro Aids was not insolvent. (§§ 26.15, 26.21.)
Section 47 of the agreement provided for arbitration, in pertinent part, as follows: “Any dispute between or among the parties or any dispute arising from or under this Stock Purchase Agreement or relating to its subject matter or enforcement shall be submitted to binding arbitration by the American Arbitration Association . . . .” The stock purchase agreement was modified, in respects that are not here relevant, by modification agreement, made on December 29, 2005, which Mixer also signed as president of AMHC.
In August 2007, Edwards commenced an arbitration proceeding before the American Arbitration Association against AMHC for payments allegedly due under the stock purchase agreement. In September 2007, AMHC and 1818 Fund commenced an action in the Superior Court of New Jersey for a declaration that Edwards’ claims were subordinate to the claims of AMHC’s senior lenders. AMHC and 1818 Fund then sought a stay in Supreme Court, Nassau County, of Edwards’ arbitration pending determination of their New Jersey action. By order dated January 6, 2009, the New Jersey Superior Court granted sum *866 mary judgment to Edwards, and held that Edwards could proceed with arbitration. By order dated May 7, 2009, the Supreme Court, Nassau County, vacated the stay of arbitration and directed AMHC and 1818 Fund to arbitrate their dispute with Edwards in the arbitration proceeding. AMHC and 1818 Fund commenced the instant action against Edwards, Mixer and others in 2008, while Edwards’ arbitration was stayed. This action alleges breach of fiduciary duty and fraud claims against Mixer based, among other acts, on conversion of bogus loans to unauthorized bonuses to himself, various accounting frauds which overstated the value of All Metro Aids, and failure to disclose that both AMHC and All Metro Aids were insolvent at and before the closing. The complaint also alleges that Edwards made fraudulent representations to AMHC and 1818 Fund as to the solvency of All Metro Aids. 1818 Fund and AMHC now seek to discontinue the instant action so that they can maintain their claims against Mixer in the arbitration with Edwards. The parties sharply dispute whether Mixer is required to arbitrate the claims in this action.
As a threshold matter, the court holds that this action is governed by the Federal Arbitration Act (FAA) (9 USC § 1 et seq.), which applies to any arbitration agreement evidencing a transaction involving interstate commerce. (9 USC § 2.) The United States Supreme Court has “interpreted the term ‘involving commerce’ in the FAA as the functional equivalent of the more familiar term ‘affecting commerce’ — words of art that ordinarily signal the broadest permissible exercise of Congress’ Commerce Clause power.” (Citizens Bank v Alafabco, Inc., 539 US 52, 56 [2003].) Here, the transaction clearly involves interstate commerce, as 1818 Fund, a Delaware partnership, seeks damages arising out of a stock purchase agreement for sale to AMHC, a Delaware corporation, of All Metro Aids and its subsidiaries, corporations doing business in New York and other states. (See Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp., 4 NY3d 247 [2005].[1]
It is well settled that “the FAA embodies a strong federal policy favoring arbitration,” and that, in accordance with this *867 policy, doubts as to the arbitrability of a claim are to be resolved in favor of arbitrability. (Thomas James Assoc., Inc. v Jameson, 102 F3d 60, 65 [2d Cir 1996] [internal quotation marks and citations omitted]; see also Singer v Jefferies & Co., 78 NY2d 76, 81-82 [1991] [applying FAA].) Arbitration “must be preferred unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.” (Thomas James Assoc., 102 F3d at 65 [internal quotation marks omitted]; Burns v New York Life Ins. Co., 202 F3d 616, 620 [2d Cir 2000].)
It is further settled that a party will not be compelled to arbitrate absent an express agreement or clear intent to do so. (Deloitte Noraudit A/S v Deloitte Haskins & Sells, U.S., 9 F3d 1060 [2d Cir 1993] [applying FAA]; God’s Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP, 6 NY3d 371 [2006] [same under New York law]; TNS Holdings v MKI Sec. Corp., 92 NY2d 335 [1998]; Eiseman Levine Lehrhaupt & Kakoyiannis, P.C. v Torino Jewelers, Ltd., 44 AD3d 581 [1st Dept 2007].) Under the FAA, the determination as to whether the parties are bound by an agreement to arbitrate is made under state law. (See Perry v Thomas, 482 US 483, 492 [1987]; Adams v Suozzi, 433 F3d 220, 227 [2d Cir 2005] [court looks to state law where “contract formation” is at issue]; Progressive Cas. Ins. Co. v C.A. Reaseguradora Nacional De Venezuela, 991 F2d 42, 46 [2d Cir 1993] [section 2 of FAA “preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate” (internal quotation marks and citation omitted)].)
The courts have repeatedly held that a party may be bound by an unsigned arbitration agreement under appropriate circumstances. Nonsignatories have thus been held bound by contractual arbitration provisions under “ordinary principles of contract and agency,” as where it is shown that the nonsignatory assumed the arbitration agreement, or was bound by the agreement under a veil-piercing/alter ego theory or by estoppel. (See e.g. Thomson-CSF, S.A. v American Arbitration Assn., 64 F3d 773, 780 [2d Cir 1995]; Deloitte Noraudit, 9 F3d at 1063-1064; TNS Holdings v MKI Sec. Corp., 92 NY2d 335 [1998], supra [nonsignatory alter ego may be compelled to arbitrate under New York law]; Matter of D & B Constr. of Westchester, Inc. [Mitrione], 21 Misc 3d 1125[A], 2008 NY Slip Op 52172[U] [Sup Ct, Westchester County 2008].) Nonsignatories have also been held estopped to avoid arbitration where they derived a
*868 direct benefit from the contract containing the arbitration provision. (Deloitte Noraudit, 9 F3d at 1063-1064; Matter of SSL Intl., PLC v Zook, 44 AD3d 429 [1st Dept 2007]; HRH Constr. LLC v Metropolitan Transp. Auth., 33 AD 3d 568 [1st Dept 2006].)
Neither party cites any authority that involves similar facts and addresses whether a party may be compelled to arbitrate where, as here, it signs only one provision of a contract containing an arbitration provision. The general authorities on the arbitrability of claims against nonsignatories must therefore control this court’s determination of the issue. It is undisputed that the stock purchase agreement was made in order to effectuate the management buy-out by which Mixer assumed the top executive position at AMHC and became a major stock owner of the company. On these facts, the court finds that Mixer directly benefitted from the agreement. Moreover, as noted above, Mixer signed section 27 in his individual capacity, representing that he had no knowledge of any fact that would cause a breach of the seller’s representations or warranties. This representation was made in connection with representations by Edwards that were made to induce AMHC’s entry into the stock purchase agreement. (See agreement §§ 26, 27.) As signatory of the agreement on behalf of AMHC, Mixer had knowledge that the agreement contained an arbitration provision that indisputably covered disputes arising out of representations as to the financial position of All Metro Aids. Under these circumstances, by agreeing to make the highly material representation in section 27 in his individual capacity, Mixer evidenced his intent to subject himself to the enforcement provision in the event of any dispute arising out of his representations. The court accordingly holds that Mixer agreed to arbitrate such dispute.[2]
The remaining issue is whether plaintiffs waived the right to arbitrate by their participation in this litigation. In arguing that a waiver has occurred, defendant cites New York cases holding that a waiver will be found where the party’s degree of participation in the litigation is inconsistent with an assertion *869 of the right to arbitrate. (See Flores v Lower E. Side Serv. Ctr., Inc., 4 NY3d 363 [2005], rearg denied 5 NY3d 746 [2005]; Sherrill v Grayco Bldrs., 64 NY2d 261 [1985]; De Sapio v Kohlmeyer, 35 NY2d 402 [1974].) However, defendant’s reliance on these cases ignores the substantial authority under the FAA which holds that where the parties have not provided for New York law to govern the enforcement of their agreement, it is for the arbitrator to decide whether allegations of waiver or delay constitute a defense to arbitrability. (Diamond Waterproofing, 4 NY3d at 252, citing Howsam v Dean Witter Reynolds, Inc., 537 US 79, 84 [2002].) While the stock purchase agreement contained a choice of law provision stating that the “arbitration shall be held in accordance with the laws of the State of New York,” this provision does not state that New York law shall govern both the agreement and its enforcement, and is therefore not sufficient to express an intention to have the court, rather than an arbitrator, determine a procedural issue such as waiver. (See Diamond Waterproofing, 4 NY3d at 253.)[3]
Finally, the court holds that the issues to be arbitrated should be limited to plaintiffs’ claims against Mixer arising out of the stock purchase agreement, and that Mixer’s counterclaims are nonarbitrable. While there is substantial authority that inextricably bound claims should be heard in the same forum (see e.g. Young v Jaffe, 282 AD2d 450 [2d Dept 2001]; Brennan v A. G. Becker, Inc., 127 AD2d 951 [3d Dept 1987]), this Department has cast doubt on whether a court may compel arbitration of nonarbitrable claims even where they are “inextricably interwoven” with arbitrable claims. (See Mionis v Bank Julius Baer & Co., 301 AD2d 104, 111 [1st Dept 2002].) In any event, it does not clearly appear from the face of the pleadings that Mixer’s counterclaims are inextricably interwoven with plaintiffs’ claims against Mixer. Mixer’s fraud or misrepresentation *870 counterclaims (denominated the first through tenth and fifteenth causes of action) allege that plaintiffs acted fraudulently or negligently to secure Mixer’s shares of stock in AMHC, to gain control of that company from Mixer, and to induce Mixer to engage in transactions with 1818 Fund. While these claims are closely related to plaintiffs’ claims to the extent that they involve the parties’ respective representations prior to the closing, Mixer’s claims also allege numerous acts by 1818 Fund after the closing to exert dominion and control over AMHC. (See counterclaims 1Í 36 et seq.) Mixer also pleads a shareholder derivative claim (eleventh cause of action), causes of action (twelfth through fourteenth) relating to breach of Mixer’s employment contract which did not contain an arbitration provision, and an apparently unrelated claim (sixteenth cause of action) on behalf of 1529 Union LLC for rent allegedly due from AMHC.
Although Mixer’s counterclaims are not properly referred to arbitration, the arbitration will likely resolve many of the issues raised by the counterclaims, particularly those based on the representations made by Mixer and 1818 Fund prior to the closing. The nonarbitrable counterclaims should therefore be stayed pending completion of the arbitration. (See Cohen v Ark Asset Holdings, 268 AD2d 285 [1st Dept 2000].)
It is accordingly hereby ordered that plaintiffs’ motion is granted to the following extent: It is ordered that plaintiffs are granted leave to discontinue this action with prejudice; and it is further ordered that plaintiffs’ claims against Mixer arising out of the stock purchase agreement are referred for arbitration; and it is further ordered that Mixer’s counterclaims in this action are severed and are stayed pending determination of the aforesaid arbitration.

 Plaintiffs expressly contend that the FAA governs the stock purchase agreement. (Plaintiffs’ mem of law in support at 10.) Defendant does not assert that the FAA is inapplicable but, as discussed infra at 868-869, correctly argues that courts in an FAA case generally apply state law to determine whether a contract providing for arbitration was formed. (See defendant’s mem of law in opposition at 8.)

. In so holding, the court notes that Mixer argued that as a signatory of only one section and not of the agreement as a whole, he was not bound by the arbitration provision. Mixer noted that 1818 Fund was not a signatory of the agreement, but did not argue, or submit authority that, 1818 Fund is not entitled to enforce the arbitration agreement as a third-party beneficiary. (See defendant’s mem in opposition at 7 n 4.)

. It is noted that New York law and the FAA apply different standards of waiver. Under the FAA, a waiver will not be inferred without prejudice to the opposing party as a result of the delay. (See e.g. Leadertex, Inc. v Morganton Dyeing & Finishing Corp., 67 F3d 20, 26 [2d Cir 1995]; Brownstone Inv. Group, LLC v Levey, 514 F Supp 2d 536 [SD NY 2007].) New York cases do not condition a finding of waiver on prejudice to the opposing party but find a waiver based on the degree of participation. (See cases cited above.) It appears that the extent of a plaintiffs participation in the litigation will be considered by the courts in determining whether the plaintiff has waived the right to arbitrate (see Sherrill, 64 NY2d at 273; Hadjioannou v Avramides, 40 NY2d 929 [1976]; Ciao Europa v Silver Autumn Hotel [N.Y.] Corp., 290 AD2d 216 [1st Dept 2002]), although there is dictum that a plaintiff “may generally be assumed to have waived” the right to arbitration. (De Sapio, 35 NY2d at 405.)