2012 Ark. 1

BDO SEIDMAN, LLP;  Mark Puckett;
and James Cross, Appellants

v.

SSW HOLDING CO., INC.;  Straits
Steel & Wire, Co.;  and Straits Di-
versification, LLC, Appellees.

No. 11–165.

Supreme Court of Arkansas.

Jan. 5, 2012.

DLA Piper LLP, by: Cary B. Samowitz, New York, NY; and Ledbetter, Cogbill, Arnold & Harrison, LLP, by: Ronald D. Harrison and Victor L. Crowell, Forth Smith, for appellants.

Loewinsohn Flegle Deary, LLP, by: David R. Deary, Carol E. Farquhar, and J. Dylan Snapp, Dallas, TX; and Cross, Gunter, Witherspoon & Galchus, P.C., by: Benjamin H. Shipley, III, Fort Smith, for appellees.

KAREN R. BAKER, Justice.

Appellants BDO Seidman, LLP, Mark Puckett, and James Cross ("BDO") appeal from the Sebastian County Circuit Court's denial of their amended motion to compel arbitration against appellees SSW Holding Co., Inc., Straits Steel & Wire, Co., and Straits Diversification, LLC ("SSW Holding"). On appeal, BDO argues (1) that the circuit court erred in denying arbitration because the claim of fraud in the inducement must be resolved by the arbitrator and not the courts, (2) that arbitration cannot be avoided because of unconscionability, and (3) that all of the claims raised fall within the scope of the broad arbitration provisions. An order denying a motion to compel arbitration is an immediately appealable order. Ark. R.App. P.–Civ. 2(a)(12) (2011); Ark.Code Ann. § 16–108–228 (Repl.2006); see IGF Ins. Co. v. Hat Creek P'ship, 349 Ark. 133, 76 S.W.3d 859 (2002). We reverse and remand.

### I. *Procedural Background*

SSW Holding filed a complaint against BDO and other defendants[1] in the Sebastian County Circuit Court, asserting claims for breach of fiduciary duty, negligence/professional malpractice, negligent misrepresentation, disgorgement of excessive and illegal fees, fraudulent inducement, fraudulent concealment, declaratory judgment, fraud, civil conspiracy, and breach of contract. SSW Holding sought damages arising from a tax-advantaged investment strategy involving investments in distressed debt that SSW Holding entered into and utilized on its federal tax returns for the 2001–2005 tax years. SSW Holding alleged that BDO devised a scheme and advised SSW Holding to execute the distressed debt strategy ("DDS"), claiming it would yield a substantial profit and minimize SSW Holding's tax liability. According to SSW Holding, at the time BDO sold the DDS, it knew or should have known that the DDS would not yield the results promised and that federal authorities were investigating the legality of similar "abusive tax shelters."

Some of the defendants removed the case to the United States District Court, Western District of Arkansas, asserting that federal-question jurisdiction existed. The district court disagreed that it had subject-matter jurisdiction and remanded the case to the Circuit Court of Sebastian County. In Sebastian County Circuit Court, BDO filed an amended motion to compel arbitration and stay the action.[2] BDO asserted that it and SSW Holding entered into two consulting agreements ("Consulting Agreement" or "Consulting Agreements"), dated April 24, 2001, and September 19, 2003, wherein BDO agreed to provide certain tax services. BDO alleged that the Consulting Agreements provided for arbitration before the American Arbitration Association. The relevant paragraphs are as follows:

2001 Consulting Agreement:

*Dispute Resolution.*

8. (d) If any dispute, controversy or claim arises in connection with the per-

---

1. The additional parties named were Paul Shanbrom; Gramercy Advisors, LLC; Gramercy Capital Recovery Fund II, LLC; Gramercy Capital Recovery Fund A, LLC; Jay Johnston; Sidley Austin Brown & Wood, LLP a/k/a Brown & Wood, LLP; Raymond J. Ru-

ble; and De Castro, West, Chodorow, Glickfield & Nass, Inc.

2. BDO's first motion to compel arbitration and stay the action was filed in federal court.

formance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York, and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association ("AAA"), except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel, and shall take place in the city in which the BDO office providing the relevant Services exists, unless the parties agree to a different locale.

11. *Governing Law.* This agreement shall be governed and construed in accordance with the laws of the State of New York, except for its conflict of law principles.

2003 Consulting Agreement:

9. (d) If any dispute, controversy or claim arises in connection with the performance or breach of this Agreement (including the validity or enforceability of this Agreement) and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration. The arbitration proceeding shall take place in the city in which the BDO Seldman office providing the relevant services exists, unless the parties agree to a different locale. The proceeding shall be governed by the provisions of the Federal Arbitration Act ("FAA") or, if a court of competent jurisdiction determines the FAA inapplicable, by the laws of the state in which the proceeding is to take place. In any arbitration instituted hereunder, the proceedings shall proceed in accordance with the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association

("AAA"), except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel.

12. *Governing Law and Severability.* This Agreement, shall be governed by, and construed in accordance with, the laws of the State of Michigan (without giving effect to the choice of law principles thereof).

SSW Holding filed a response to the amended motion to compel arbitration and stay this action. SSW Holding stated that the 2001 Consulting Agreement contained an arbitration provision and that New York law governed. SSW Holding argued that under New York law, the arbitration provision was invalid and unenforceable because fraud permeated the entire Consulting Agreement. As a basis for denying the motion, SSW Holding also asserted that the claims against BDO were outside the scope of both arbitration provisions as those provisions only covered disputes arising "in connection with the performance or breach" of the Consulting Agreements, which specifically stated that they do not apply to investment advice and services. Finally, SSW Holding stated that the arbitration provision in the 2001 Consulting Agreement was procedurally and substantively unconscionable under New York law and that the arbitration provision in the 2003 Consulting Agreement was substantively unconscionable under Michigan law because (1) the arbitration provisions violate public policy as they were part of a conspiracy to commit criminal fraud, (2) BDO was the sole creator of the provisions, (3) the provisions contain unreasonable and impermissible limits on discovery, and (4) the provisions impermissibly preclude SSW Holding's right to recover punitive damages. The response included voluminous exhibits of actual pleadings in criminal cases wherein some of the original defendants, their officers, and employees had been charged or convicted of offenses

arising from the performance of DDS with other clients.

BDO replied that all of the claims raised in the complaint related to services that it agreed to provide pursuant to the Consulting Agreements, which contain a broad provision mandating arbitration of "any dispute, controversy or claim aris[ing] in connection with the performance or breach of this agreement." BDO contended that under New York law the arbitration clause must provide that New York law governed its "enforcement" and as that language was absent from the 2001 Consulting Agreement, the FAA applied. BDO asserted that the FAA required arbitration of the fraudulent-inducement claim. BDO also argued that because the claim of unconscionability concerned the contract as a whole, as opposed to only the arbitration provision, arbitration and not the court must decide the issue.

After a hearing, the circuit court entered an order denying BDO's amended motion to compel arbitration. The court found that New York law governed the 2001 Consulting Agreement and that the FAA does not apply and does not preempt New York law. The order stated that BDO could not enforce the 2001 arbitration provision because BDO committed fraud as part of a grand scheme that permeated the entire 2001 Consulting Agreement and its arbitration provision. The court further held that BDO could not enforce the arbitration clause in the 2001 Consulting Agreement because it was procedurally and substantively unconscionable. The court also found that BDO could not enforce the arbitration provision in the 2003 Consulting Agreement because pursuant to the FAA the arbitration clause was procedurally and substantively unconscionable under Michigan law.

## II. *Standard of Review*

We review a circuit court's order denying a motion to compel arbitration de novo on the record. *S. Pioneer Life Ins. Co. v. Thomas,* 2011 Ark. 490, 385 S.W.3d 770. De novo review means that the entire case is open for review. *Unknown Heirs of Warbington v. First Cmty. Bank,* 2011 Ark. 280, 383 S.W.3d 384. Arbitration is simply a matter of contract between parties. *Ruth R. Remmel Revocable Trust v. Regions Fin. Corp.,* 369 Ark. 392, 255 S.W.3d 453 (2007). The issue of whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles. *Tyson Foods, Inc. v. Archer,* 356 Ark. 136, 147 S.W.3d 681 (2004).

BDO argues that it was error to deny its amended motion to compel arbitration because (1) SSW Holding's claim of fraud in the inducement must be resolved by the arbitrator and not the courts; (2) SSW Holding may not avoid arbitration due to alleged unconscionability; and (3) all of SSW Holding's claims falls within the scope of the parties broad arbitration provisions. To resolve these arguments, we reframe the issues as (1) whether New York law or the FAA governs the enforcement of the arbitration provision in the 2001 Consulting Agreement; (2) whether any of the claims raised by SSW Holding in its complaint are subject to arbitration; and (3) whether SSW Holding's assertion of unconscionability and fraud renders the arbitration provisions in the 2001 and 2003 consulting agreements unenforceable.

## III. *New York Law or the FAA*[3]

Because arbitration is a matter of contract between the parties, it is a way

---

**3.** The parties' argument regarding the 2001 Consulting Agreement is limited to whether New York law or the FAA applies to the arbitration provision. No argument is made that Arkansas law governs the arbitrability of

to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The FAA merely provides a forum to resolve private disputes when the parties have agreed to use such a forum. *Danner v. MBNA Am. Bank, N.A.,* 369 Ark. 435, 255 S.W.3d 863 (2007) (citing *MCI Telecomm. Corp. v. Exalon Indus., Inc.,* 138 F.3d 426 (1st Cir.1998)). The FAA requires the enforcement of an arbitration agreement upon proof (1) that a written agreement to arbitrate exists, and (2) that the written agreement is contained within a contract that involves commerce. 9 U.S.C. § 2. Neither party disputes that there is a written agreement to arbitrate and that the contract involves commerce.

BDO argues that the FAA governs the question of arbitrability. Specifically, BDO contends that while the arbitration provision in the 2001 Consulting Agreement states New York law applies, it does not contain the specific "enforcement" language necessary to trigger enforcement pursuant to New York law; therefore, the FAA applies. SSW Holding counters that the arbitration clause choice-of-law provision explicitly states that any "dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York," and that no special language is necessary. The import of whether New York law governs the enforcement of the arbitration provision in this case is that under New York law, unlike the FAA, the issue of arbitrability is for the court to decide. *See Smith Barney, Harris Upham & Co. v. Luckie,* 85 N.Y.2d 193, 623 N.Y.S.2d 800, 647 N.E.2d 1308 (1995) (Under New York statutory and case law, the court reviewing the motion to compel arbitration determines whether the parties made a valid agreement to arbitrate, and if so, whether there has been compliance with the agreement.); *see also* CPLR § 7503(a).

BDO cites *Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp.,* 4 N.Y.3d 247, 793 N.Y.S.2d 831, 826 N.E.2d 802 (2005), to support its proposition. There, New York's highest court considered whether New York law or the FAA governed an arbitration clause where the parties agreed to submit to arbitration any claim arising out of or related to their contract. The written agreement also stated that it would be governed by the place where the project was located, and it was undisputed that the place of the project was New York. *Diamond Waterproofing* held that the FAA controlled because the arbitration clause in question did not evince an intent to have New York law govern the agreement's enforcement, the court said that

> [a] choice of law provision, which states that New York law shall govern both "the agreement *and its enforcement,*" adopts as "binding New York's rule that threshold Statute of Limitations questions are for the courts." In the absence of more critical language concerning enforcement, however, all controversies, ... are subject to arbitration.

*Id.* at 807 (emphasis in original) (internal citations omitted).

BDO also cites to *All Metro Health Care Services, Inc. v. Edwards,* 25 Misc.3d 863, 884 N.Y.S.2d 648 (N.Y.Sup.Ct.2009). Relying on *Diamond Waterproofing,* the *All Metro Health* court held that there was substantial authority under the FAA that where the parties have not provided for New York law to govern the enforcement of their agreement, it was for the arbitrator to decide an issue going to the arbi-

disputes allegedly arising out of the 2001 Consulting Agreement.

trability of the claim. In determining an arbitration clause did not contain the proper enforcement language and therefore, New York law did not apply, the court said "[w]hile the Stock Purchase Agreement contained a choice of law provision stating that the 'arbitration shall be held in accordance with the laws of the State of New York,' this provision does not state that New York law shall govern both the agreement *and its enforcement,* and is therefore not sufficient to express an intention to have the court, rather than the arbitrator, determine a procedural issue." *Id.* at 653.

The arbitration clause in the 2001 Consulting Agreement at issue here states "If any dispute, controversy or claim arises in connection with the performance or breach of this agreement ... then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York." The "enforcement" language necessary under New York law is absent. Therefore, based on the clear holdings of *Diamond Waterproofing* and *All Metro Health Care Services,* we conclude that the FAA applies to whether arbitration is decided by the court or an arbitrator. *See* 9 U.S.C. § 2 (2009) (stating FAA applies to any written agreement to arbitrate "a contract evidencing a transaction involving commerce"). Because the FAA governs the arbitration provision in the 2001 Consulting Agreement, we reverse the circuit court's finding that New York law governs.

### IV. *Claims Within Scope of Arbitration Provision*

■ We have determined that the FAA governs the 2001 Consulting Agreement and the parties agree that the FAA governs the 2003 Consulting Agreement. We now determine whether SSW Holding's claims fall within the scope of the parties' arbitration agreements. The FAA provides,

If any suit or proceeding is brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The FAA is a congressional statement of a liberal policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* When an arbitration clause is broad and there is a dispute as to whether a matter is arbitrable, all reasonable doubt should be resolved in favor of arbitration. *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In Arkansas, as a matter of public policy, arbitration is strongly favored by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Showmethemoney Check Cashiers, Inc. v. Williams,* 342 Ark. 112, 27 S.W.3d 361 (2000). Even though under Arkansas law certain matters are not arbitrable regardless of the language used in an arbitration agreement, we recognize that "[t]he Federal Arbitration Act and the laws of other jurisdictions do not restrict the scope of arbitration as we do in this state." *Id.* at 119, 27 S.W.3d at 365.

BDO asserts that both of the arbitration provisions cover "any dispute, controversy or claim aris[ing] in connection with the performance or breach of this agreement," and that SSW Holding's claims are closely connected to the parties' Consulting Agreements. In contrast, SSW Holding contends that BDO intentionally omitted the DDS from the scope of the services to be rendered in the Consulting Agreements, and because the claims in the complaint arise from the DDS, they are not within the scope of the arbitration provisions. As further proof that the claims do not fall within the arbitration provisions, SSW Holding posits that each Consulting Agreement "specifically states that it does not apply to 'investment' advice and services."

While SSW Holding correctly notes that the agreements specifically state BDO is not in the business of providing investment advice or services, we agree with BDO that SSW Holding's claims directly relate to the DDS, which involve tax–planning advice. Both Consulting Agreements have a section heading entitled "Services" which state:

2001 Consulting Agreement: Services

(a) During the term, BDO agrees to provide the following consulting services to the Client (the "Services"): consulting services in conjunction with the sale of equity interest(s) in certain entities, including assistance in determining the overall effects of potential sales price(s) and allocations thereof, assisting the Client and/or the Client's advisors in structuring the transaction(s) to attain the most beneficial tax results, and assisting with certain income tax, estate tax, personal financial planning and other financial aspects of various anticipated investment activities. BDO is not in the business of providing investment or legal advice or related services, thus, none of the services to be rendered by BDO to Client can or will include invest-

ment or legal advice and should not be considered as investment or legal advice. Client acknowledges and represents that it will, and is, not relying upon BDO for investment or legal advice or related services.

2003 Consulting Agreement: Services

(a) During the Term, BDO agrees to provide the following tax consulting services to the Client (the "Services"): tax consulting services in conjunction with certain income tax, and other financial aspects of various anticipated investment activities. These tax consulting services will also include assistance with the tax ramifications of various hedging, interest rate swaps and related financial derivative transactions that the Client is contemplating. BDO is not in the business of providing investment or legal advice (other than with respect to tax matters) or related services, thus, none of the services to be rendered by BDO to Client can or will include investment or legal advice (other than with respect to tax matters) and should not be considered as investment or legal advice. Client acknowledges and represents that it will, and is, not relying upon BDO for investment or legal advice or related services.

In the complaint, SSW Holding seeks compensation "against their professional advisors for damages arising from a tax-advantaged investment strategy involving investments in distressed debt that [SSW Holding] entered into and utilized on their federal tax returns for the 2001–2005 tax years." We do not agree that the limiting language under the sections entitled "services" is dispositive of whether the claims fall within the scope of the matters to be arbitrated. The services that BDO agreed to furnish, and apparently did furnish in the form of the DDS, involve matters SSW Holding presents in its complaint. Resolv-

ing this issue under the FAA, any doubt that we might have regarding whether the claims in the complaint are within the scope of the matters the parties agreed to arbitrate, we resolve in favor of arbitration.

## V. *Defenses to Arbitration*

The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). The Supreme Court has described 9 U.S.C. § 2, the primary substantive provision of the act, as reflecting both a "liberal federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and the "fundamental principle that arbitration is a matter of contract," *Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. ——, ——, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), and enforce them according to their terms, *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

The final phrase of section 2, however, permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." This permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *see also Perry v. Thomas,* 482 U.S. 483, 492–93 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

Having determined SSW Holding's claims fall within the scope of the arbitration provisions, we must determine whether SSW Holding's defenses of procedural and substantive unconscionability and fraud invalidate, or render unenforceable, the arbitration provisions. Before the circuit court, SSW Holding challenged the 2001 and 2003 Consulting Agreements based upon procedural and substantive unconscionability and challenged the 2001 Consulting Agreement based upon fraud. We are obliged to analyze the unconscionability claims under both New York and Michigan state law, but only New York state law for the fraud claim. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (choice-of-law provision supplies that state's substantive law principles).

### A. Unconscionability

Under New York law, a contract provision is unconscionable when it is grossly unreasonable or unconscionable in light of the mores and business practices of the time and place, making it unenforceable according to its literal terms. *Gillman v. Chase Manhattan Bank, N.A.,* 73 N.Y.2d 1, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988). Generally, a determination of unconscionability requires a showing that the contract was procedurally and substantively unconscionable when made. *Id.* Likewise, under Michigan law, for a contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present. *Liparoto Constr., Inc. v. Gen. Shale Brick, Inc.,* 284 Mich.App. 25, 772 N.W.2d 801 (2009).

#### 1. *Procedural Unconscionability*

Under both New York and Michigan laws, the procedural unconscion-

ability requires an examination of the contract–formation process and the alleged lack of meaningful choice by one party coupled with unreasonably favorable terms to the other party. *Gillman, supra; Liparoto Constr., supra.* SSW Holding argues that the arbitration clauses violate public policy because they were part of a conspiracy to commit civil and criminal fraud. Additionally, SSW Holding contends that it "had absolutely no input as to the language of the arbitration provisions," that BDO designed in a fraudulent manner to conceal its wrongful conduct, and that BDO never discussed the provisions with it. Further, SSW Holding asserts that BDO presented the DDS as a package deal and that SSW Holding had to enter into the Consulting Agreements to be able to get the promised "significant investment and tax benefits."

SSW Holding's allegation that BDO made numerous false representations inducing them to enter into the arbitration provision, are not persuasive. Although the complaint contains an isolated reference to the arbitration provisions being procured through fraud, the overwhelming majority of the factual allegations in the ninety-seven page complaint focus on the overall grand scheme in the formation of the Consulting Agreements. This type of allegation falls short of what is required to prove procedural unconscionability regarding the arbitration clause. Such a claim is proper for an arbitrator to decide. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (holding if the claim is fraud in the inducement of the arbitration clause itself—an issue that goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it; otherwise, claims involving the contract generally should be decided by the arbitrator); *see also Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.,* 117 F.3d 655, 667 (2d Cir.1997) (case properly sent to arbi-

tration when there was no fraud or misrepresentation directly relating to arbitration clause); *Kowalewski v. Samandarov,* 590 F.Supp.2d 477, 487 (S.D.N.Y.2008) (holding a challenge of unconscionability to the whole contract, as opposed to the arbitration provision specifically, is "an arbitrable matter not properly considered by the court").

Because the circuit court found that the arbitration provisions in the 2001 and 2003 Consulting Agreements were unenforceable and invalid due to procedural unconscionability, we reverse.

### 2. *Substantive Unconscionability*

Under both New York and Michigan laws, a contract's terms are substantively unconscionable when they are unreasonably favorable to the party against whom unconscionability is claimed. *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198 (2d Cir. 1999); *Matter of Friedman,* 64 A.D.2d 70, 407 N.Y.S.2d 999 (N.Y. App. Div. 1978); *Liparoto Constr., supra.* By agreeing to arbitrate, a party does not forego his substantive rights, he simply agrees to submit to an arbitral, rather than a judicial forum. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

SSW Holding asserts that substantive unconscionability exists in this case due to the impact on it of two provisions in the Consulting Agreements. Those provisions are that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel, and any award shall not include punitive damages.

SSW Holding argues that it is unduly burdened by not being permitted discovery because the information needed to prove its claims is within the control of BDO, whereas BDO does not need any discovery from SSW Holding. However, the provisions do not exclude the right to

discovery, they simply require either party to get permission from the arbitration panel. Also, limitations on discovery in the arbitration process do not invalidate a contract. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F.Supp.2d 291 (S.D.N.Y.2002). We also reject the contention that the inability to recover punitive damages invalidates an arbitration provision. *Rush v. Oppenheimer & Co., Inc.*, 638 F.Supp. 872 (S.D.N.Y.1986); *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334 (7th Cir. 1984); and *Surman v. Merrill Lynch, Pierce, Fenner & Smith*, 733 F.2d 59 (8th Cir.1984).

Because the circuit court found that the arbitration provisions in the 2001 and 2003 Consulting Agreements were unenforceable and invalid due to substantive unconscionability, we reverse.

### B. Fraud

▮▮ Alleging fraud, SSW Holding asserts that BDO and others made numerous knowingly false affirmative representations and intentional omissions of material facts in order to get substantial fees. While SSW Holding lists sixty instances of actions and inactions constituting fraud, the allegations of fraud are directed at the 2001 Consulting Agreement as a whole, as opposed to the arbitration clause. SSW Holding concludes that it never would have hired BDO but for these intentional, material misrepresentations. Before the circuit court, SSW Holding sought invalidation based upon fraud of the arbitration provision in the 2001 Consulting Agreement.

▮▮ If a claim of fraudulent inducement relates to the contract generally, and the contract contains an arbitration clause, the language of the FAA provides that the dispute must be adjudicated by the arbitrator. *Prima Paint, supra.* In *Buckeye*

*Check Cashing, Inc. v. Cardegna*, the Court found: "First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts." 546 U.S. 440, 445–46, 126 S.Ct. 1204, 163 L.Ed.2d 1038. Here, SSW Holding's fraud claim attacks the validity of the 2001 Consulting Agreement as a whole and not specifically the arbitration clause. Therefore, under *Buckeye*, the arbitrator, not the court, determines the issue. Because the trial court found fraud invalidated and made unenforceable the arbitration provision in the 2001 Consulting Agreement, we reverse.

Reversed and remanded.

DANIELSON, J., not participating.