SLIP OPINION

Cite as 2014 Ark. 280

# SUPREME COURT OF ARKANSAS

No. CV–13–319

| | |
|---|---|
| ASSET ACCEPTANCE, LLC<br>APPELLANT<br><br>V.<br><br>AMY MURPHY NEWBY<br>APPELLEE | **Opinion Delivered** June 19, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT<br>[NO. 60–CV-2012-992]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><u>AFFIRMED ON DIRECT APPEAL;<br>CROSS-APPEAL DISMISSED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Asset Acceptance, LLC (Asset) appeals an order of the Pulaski County Circuit Court denying its motion to compel arbitration of a suit filed by Asset against appellee Amy Murphy Newby and a counterclaim filed by Newby individually and on behalf of a class of similarly situated persons (Newby). For reversal, Asset contends that the circuit court erred in concluding that Asset had waived its right to arbitration by filing its complaint in circuit court. Asset also asserts that it presented enough specific evidence to show that its claim against Newby, as well as her counterclaim, were subject to an arbitration agreement. Newby has filed a cross-appeal of the circuit court's decision denying sanctions against Asset pursuant to Arkansas Rule of Civil Procedure 11. As this case is an interlocutory appeal from a denied motion to compel arbitration, our jurisdiction is proper pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2013). We affirm on direct appeal and dismiss the cross-

appeal.

Asset acquires debts and collects defaulted debts, including credit–card debts. On February 28, 2012, Asset filed a complaint against Newby, alleging that she had received a credit card from Asset and that her account was past due and remained unpaid. The complaint sought a judgment in the amount of $6,204.35, interest in the amount of $4,907.73, and costs and attorney's fees. On April 13, 2012, Newby filed an answer and asserted a counterclaim against Asset. In her answer, Newby denied that she had ever been issued a credit card by Asset and denied owing Asset for any overdue balance. She asserted a class-action counterclaim alleging violations of the Fair Debt Collection Practices Act and the Arkansas Deceptive Trade Practices Act, and claims of unjust enrichment, malicious prosecution, and abuse of process. Essentially, Newby contended that Asset had a history of making false or reckless allegations regarding the existence of outstanding debts.

On October 11, 2012, Asset filed a motion to compel arbitration, asserting that the original credit card was issued to Newby by Chase Bank (Chase) Visa Credit and was subject to a Cardholder Agreement that contained an arbitration provision. According to Asset, the Cardholder Agreement provides, in relevant part:

> Any dispute may be resolved by binding arbitration. Arbitration replaces the right to go to court. You will not be able to bring a class action or other representative action in court.

> This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and enforceable under the Federal Arbitration Act (The "FAA"), 9 U.S.C. § 1–16 as it may be amended. This Arbitration Agreement set forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

Asset attached a copy of an undated and unsigned Cardholder Agreement, which it contended governed Newby's account, a bill of sale purporting to show that Asset purchased several accounts from Chase, and a spreadsheet excerpt that purported to show that Newby had an outstanding balance on her account.

On October 24, 2012, Newby filed a motion in opposition to the motion to compel arbitration. In that motion, Newby asserted that Asset had waived its right to compel arbitration by filing an action in court, that Asset was not entitled to arbitration because Chase was not named as a codefendant in any action, and that Asset had failed to produce evidence of Newby's assent to arbitrate. Subsequently, Asset filed a documentary supplement to its motion to compel arbitration on February 12, 2013. Attached to that supplement were additional documents purporting to show that Newby had a credit card with Chase and that she had failed to make timely payments on her account. Included with these documents were additional account statements that Asset contended were mailed to Newby at her previous place of residence.

Newby's motion for sanctions was filed on November 21, 2012. In her motion, Newby contended that Asset's motion to compel arbitration was not well-grounded in fact and was not warranted under existing law. Newby asserted that Asset took an "affirmative step" by filing its lawsuit in circuit court and that Asset "implemented the litigation machinery" of the circuit court by issuing subpoenas for discovery, in addition to requesting damages, attorney's fees, and interest. Moreover, Newby contended that Asset's motion to

compel "lacks a factual basis to determine assent to the alleged [arbitration] agreement."

On February 13, 2013, the circuit court held a hearing on Asset's motion to compel arbitration, Newby's motion for sanctions, and several other pending motions. During the hearing, the circuit court made the following statement from the bench:

> Assuming that it's in fact a Chase card, or that it's the information provided that has the arbitration, the plaintiff [Asset] has invoked the jurisdiction of this Court. The plaintiff did not file arbitration proceedings. The plaintiff invoked the jurisdiction of this Court with respect to the named defendant. The plaintiff's motion to compel arbitration is denied. The defendant's motion for sanctions is denied.

Subsequently, on March 1, 2013, the circuit court entered a written order disposing of Asset's motion to compel arbitration and Newby's motion for sanctions as follows, in relevant part:

> 4. Asset Acceptance's Motion to Compel Arbitration and Stay Plaintiff's Complaint is denied.
> 5. Ms. Newby's Motion for Sanctions is denied.

The circuit court's order contains no findings or conclusions of law regarding these two motions. Asset filed a timely notice of appeal from this order, and Newby filed a timely cross-appeal.

On appeal, Newby maintains that Asset has failed to show that an agreement to arbitrate existed because it has failed to present any specific evidence that the Cardholder Agreement was communicated to her. Asset argues that the circuit court implicitly found that an agreement to arbitrate existed because the court denied Asset's motion to compel arbitration on the basis of waiver. Because waiver is the relinquishment of a known right, *see, e.g.*, *T.C. v. State*, 2010 Ark. 240, 364 S.W.3d 53, Asset contends that the circuit court must

4

have implicitly found that the arbitration agreement existed in order to reach the waiver issue during the hearing.

When a court is asked to compel arbitration, it is limited to deciding two threshold questions: 1) Is there a valid agreement to arbitrate between the parties? and 2) If such an agreement exists, does the dispute fall within its scope? *LegalZoom.com, Inc. v. McIllwain*, 2013 Ark. 370, ___ S.W.3d ___. In Arkansas, as a matter of public policy, arbitration is strongly favored and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Spencer, supra.* The question of whether a dispute should be submitted to arbitration is a matter of contract construction. *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally. *May Constr. Co., Inc. v. Benton Sch. Dist. No. 8*, 320 Ark. 147, 895 S.W.2d 521 (1995). We have long recognized that the essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Cash in a Flash Check Advance of Arkansas, L.L.C.*, 348 Ark. 459, 74 S.W.3d 600. This court reviews a trial court's order denying a motion to compel arbitration de novo on the record. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681 (2004).

Recently, this court rejected the notion that a circuit court can implicitly rule on whether an arbitration agreement exists by simply denying a motion to compel arbitration on other grounds. *Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, at 6, ___ S.W.3d ___ ("The Bank takes the position that the circuit court implicitly, if not expressly found, that there was

a valid arbitration agreement. Without such a finding, however, we can only speculate about whether the circuit court considered the issue."). In *Bank of the Ozarks*, this court reversed and remanded for the circuit court to resolve the disputed issue of mutual assent to the arbitration agreement, holding that a circuit court must rule on the threshold issue of contract formation before determining whether the claims fall within the scope of the arbitration agreement and before considering any defenses that might otherwise invalidate the agreement. While at first blush it might appear that our holding in *Bank of the Ozarks* would require us to reverse and remand this case for the circuit court to rule on the question of whether a valid arbitration agreement exists, we find that the order in present case is distinguishable from *Bank of the Ozarks* and is not controlled by that precedent.

In *Bank of the Ozarks*, the circuit court's written order denied the motion to compel arbitration based solely on the equitable defense that the arbitration agreement was unconscionable without addressing the threshold issue of assent to arbitrate. Here, the circuit court's oral ruling touched on the defense of waiver. However, the court's written order denying Asset's motion to compel arbitration simply states that the motion is denied without specifying the basis for its decision. If a trial court's ruling from the bench is not reduced to writing and filed of record, it is free to alter its decision on further consideration of the matter. *Nat'l Home Ctrs., Inc. v. Coleman*, 370 Ark. 119, 257 S.W.3d 862 (2007). Simply put, the written order controls. *Id.* In addition, we have previously recognized that when a circuit court denies a motion without expressly stating the basis for its ruling, that ruling encompasses the issues presented to the circuit court by the briefs and arguments of the parties. *Hardin v.*

6

*Bishop*, 2013 Ark. 395, ___ S.W.3d ___ (reviewing the merits of a circuit court's decision granting summary judgment, despite the fact that the circuit court did not expressly state the basis for its ruling); *see also* Ark. R. Civ. P. 52(a) (2013) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules."). Here, Asset and Newby both briefed the issues of assent, mutuality, and waiver, among others, to the circuit court. Therefore, we conclude that the circuit court's blanket denial of the motion to compel arbitration constitutes a ruling on all of the issues raised by the parties. Because the circuit court has ruled on the threshold issue of mutual assent, this case is distinguishable from *Bank of the Ozarks*, and we are not precluded from reviewing merits of this appeal.[1]

Turning to the merits of Asset's appeal, we must first determine whether an agreement to arbitrate exists. That is, whether there has been mutual agreement, with notice as to the terms and subsequent assent. *Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005). We keep in mind two legal principles when deciding whether parties entered into a valid contract: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds

---

[1]This case does not implicate our holding in *Arkansas Lottery Commission v. Alpha Marketing*, 2012 Ark. 23, 386 S.W.3d 400, where we held that the circuit court's failure to make an express ruling on the issue of sovereign immunity precluded the Commission from immediately appealing the order. In that case, sovereign immunity was the basis of our jurisdiction, and as such, a specific finding on that issue was necessary for our review. Rather, because the threshold arbitration issues are not jurisdictional in nature, this case is more similar to our holding in *Hardin, supra*. Our jurisdiction is premised on an order denying a motion to compel arbitration, which we clearly have in this case. Ark. R. App. P.–Civ 2(a)(12).

7

as to all terms, using objective indicators. *Id*. (citing *Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001)). Both parties must manifest assent to the particular terms of the contract. *Id*. (citing *Van Camp v. Van Camp*, 333 Ark. 320, 969 S.W.2d 184 (1998)). For a party to assent to a contract, the terms of the contract must be effectively communicated. *Id*.; *see also DIRECTV, Inc. v. Murray*, 2012 Ark. 366, 423 S.W.3d 555 (holding that the trial court did not err in finding no mutual assent to the arbitration provision in a contract where the customer cancelled the contract within ten days of receipt of the contract).

In *Alltel Corp. v. Sumner*, Alltel appealed a denied motion to compel arbitration, contending that the company's service agreement and its terms and conditions contained an arbitration provision. While the appellees agreed that they subscribed to Alltel's wireless telephone service, they submitted no evidence of knowledge about the service agreement and its terms and conditions. In support of the motion to compel arbitration, Alltel relied on an affidavit suggesting that because the company's practice and procedure is to provide copies of the terms and conditions prior to the initiation of service, the appellees received notice of the arbitration provision. *Alltel Corp.*, 360 Ark. 573, 203 S.W.3d 77. The circuit court denied Alltel's motion to compel arbitration, finding that Alltel offered insufficient proof that the arbitration clause was communicated to the appellees. We affirmed the circuit court's order, holding that there must be specific evidence that the company implemented those practices and procedures such that notice to the affected party can be reasonably inferred from the circumstances.

In the present case, we are guided not only by our de novo standard of review, but also by our decision in *Alltel*. Here, Asset attached a copy of a Cardholder Agreement that it alleged was entered into between Newby and Chase. However, this agreement is undated and unsigned. On its face, there is nothing to connect the Cardholder Agreement to Newby or her account. Moreover, Asset offers no evidence of when this Cardholder Agreement was communicated to Newby by Chase. Instead, Asset contends that because Newby used a Chase credit card, she agreed to the terms of the attached Cardholder Agreement. In support, Asset cites this court to *Grasso v. First USA Bank*, 713 A.2d 304, 309 (Del. Super. Ct. 1998) and *In re Brown*, 403 B.R. 1, 4 (Bankr. E.D. Ark. 2009). However, the cases cited by Asset are distinguishable because in those cases the courts determined that the credit-card holder had in fact used the card or made payments on the card balance. In the instant case, the circuit court never made any finding that Newby opened the credit-card account at issue, much less made a purchase using the card or a payment on the account. In fact, Newby contends that she has never had or used the credit-card account for which Asset is seeking payment.[2]

---

[2]The account statements provided by Asset show that an account was opened in the name of Amy Murphy for a Countrywide Visa. The account statements also have a logo for FirstUSA in the upper right-hand corner. An affidavit from Chase's Corporate Secretary states that Chase is a subsidiary of JPMorgan that acquired FirstUSA Bank. According to the affidavit, FirstUSA Bank has also gone by the names First Chicago, Bank One Corporation, and Bank One. There is no mention of Countrywide being one of the business aliases of FirstUSA, Chase, or JPMorgan. In her answer to the complaint and the amended complaint, Newby denied that she ever received a credit card from either Asset or Chase. Thus, Asset has, at best, made an allegation that Newby was issued and used a FirstUSA credit card that was subsequently acquired by Chase. Were this court to presume that Newby used a Chase credit card, there is nothing in the record to confirm that the Cardholder Agreement attached to the motion to compel was in effect at the time Newby allegedly used a Chase credit card.

SLIP OPINION

Asset also attempts to avoid the application of this court's *Alltel* precedent by asserting that the arbitration clause is subject to the Federal Arbitration Act (FAA) and is governed by the laws of Delaware. Asset bases this argument on the fact that the Cardholder Agreement states that the arbitration clause is governed by the FAA and that the governing law for the agreement is "federal law, and to the extent state law applies, the law of Delaware." Again, this argument presupposes that Newby was subject to the terms of the Cardholder Agreement. Furthermore, this court will determine whether a party agreed to arbitrate before applying the FAA. *Ruth R. Remmel Revocable Trust v. Regions Fin. Corp.*, 369 Ark. 392, 255 S.W.3d 453 (2007). Because arbitration is a matter of contract between the parties, it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). The FAA merely provides a forum to resolve private disputes when the parties have agreed to use such a forum. *Danner v. MBNA Am. Bank, N.A.*, 369 Ark. 435, 255 S.W.3d 863 (2007) (citing *MCI Telecomms. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426 (1st Cir. 1998)). The FAA requires the enforcement of an arbitration agreement upon proof that a written agreement to arbitrate exists and that the written agreement is contained within a contract that involves commerce. 9 U.S.C. § 2 (2012); *see also BDO Seidman, LLP v. SSW Holding Co.*, 2012 Ark. 1, 386 S.W.3d 361. Asset has failed to make a threshold showing that a written agreement to arbitrate existed. Consequently, the FAA does not apply.[3]

_____

[3]We note that this outcome is consistent Delaware law as well. The Delaware Supreme Court has recognized that in a proceeding to stay or to compel arbitration, the question of

Asset did not produce specific evidence that Newby was subject to the Cardholder Agreement attached to its motion to compel arbitration. Likewise, Asset has not demonstrated that the arbitration clause in that agreement was communicated to Newby or that she assented to that clause by use of the credit card. Accordingly, we affirm the circuit court's order denying Asset's motion to compel arbitration. Because the additional issues argued by Asset and Newby presume the existence of a contract requiring arbitration, we need not address those issues.

Finally, we dismiss Newby's cross–appeal of her denied motion for Rule 11 sanctions. Arkansas Rule of Appellate Procedure–Civil 2(a) provides for this court's jurisdiction over interlocutory appeals only in specific circumstances. The denial of a motion for sanctions under Rule 11 is not one of those circumstances. This appeal is permitted on an interlocutory basis only to address issues related to the denial of a motion to compel arbitration pursuant to Ark. R. App. P.–Civil 2(a)(12). The denial of a motion for Rule 11 sanctions does not fall within the purview of this type of interlocutory appeal, and thus that issue is beyond the scope of this limited appeal. *Arnold & Arnold v. Williams*, 315 Ark. 632, 870 S.W.2d 365 (1994).

---

whether the parties agreed to arbitrate is generally one for the courts and not for the arbitrators. *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998) (citing *AT &T Techns., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (holding that the question of whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise)). While Delaware courts recognize that any doubts as to arbitrability are to be resolved in favor of arbitration, a court will not compel a party to arbitrate, absent a clear expression of such intent. *Id.* (citing *Pettinaro Constr. Co. v. Harry C. Partridge, Jr. & Sons, Inc.*, 408 A.2d 957 (Del. Ch. 1979)). To the extent that Delaware law would apply to the arbitration provision at issue, the law of that state permits a court to decide whether the parties agreed to arbitrate and requires a clear expression of the intent to arbitrate.

SLIP OPINION

Therefore, we dismiss Newby's cross-appeal.

Affirmed on direct appeal; dismissed without prejudice on cross-appeal.

HANNAH, C.J., and CORBIN and DANIELSON, JJ., dissent.

**PAUL E. DANIELSON, Justice, dissenting.** I dissent from the majority's opinion in the direct appeal. I simply cannot agree that the instant case can be distinguished from *Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, ___ S.W.3d ___, handed down by this court a mere month ago, and, therefore, I would reverse and remand.

As noted in the majority, this court held in *Bank of the Ozarks* that a circuit court must rule on the threshold issue of contract formation before determining whether the claims fall within the scope of the arbitration agreement and before considering any defenses that might otherwise invalidate the agreement. Here, Newby argued waiver as a defense below. It is perfectly clear from the circuit court's oral ruling that it opined that even if there had been an agreement, Asset waived it:

> Assuming that it's in fact a Chase card, or that it's the information provided that has the arbitration, the plaintiff has invoked the jurisdiction of this Court. The plaintiff did not file arbitration proceedings. The plaintiff invoked the jurisdiction of this Court with respect to the named defendant.

Because the circuit court skipped over the first step of making a determination on the threshold issue of whether there was an agreement, just as the circuit court did in *Bank of the Ozarks*, we must reverse and remand if stare decisis means anything.

The majority wants to disregard the circuit court's oral ruling because the written ruling simply reflects that Asset's motion to compel arbitration was denied. In support of this,

it cites to a case in which this court held that a circuit court is free to alter its decision on further consideration of the matter and the written order controls. *See Nat'l Home Ctrs., Inc. v. Coleman*, 370 Ark. 119, 257 S.W.3d 862 (2007) (citing *McGhee v. Arkansas Bd. of Collection Agencies*, 368 Ark. 60, 243 S.W.3d 278 (2006)). While that makes perfect sense in cases where there is some sort of conflict between the oral ruling and the written ruling, it is not called for in a case in which the oral ruling simply explains the reasoning behind the written order. *Cf. McGhee*, *supra* (where this court could not be certain that the circuit court intended to find an act constitutional); *cf. also Stills v. Stills*, 2010 Ark. 132, 361 S.W.3d 823 ("To the extent that the court's bench ruling conflicts with its written order, if at all, the written order controls over the court's oral ruling."); *Carre v. Nance*, 2010 Ark. 25 (the oral dismissal of parties was never reduced to a written order); *Nelson v. Stubblefield*, 2009 Ark. 256, 308 S.W.3d 586 (where the circuit court orally ruled it would allow certain testimony, but the written order reflected that the testimony would be reviewed at trial).

It is for these reasons that I respectfully dissent.

HANNAH, C.J., and CORBIN, J., join.

*Dover Dixon Horne PLLC*, by: *Michael G. Smith*, for appellant.

*Emerson Poynter LLP*, by: *Scott E. Poynter* and *Corey D. McGaha*; *The Cruz Law Firm*, by: *Kathy A. Cruz*; *Arnold, Batson, Turner & Turner*, by: *Todd M. Turner*; and *Joel Hargis*, for appellee.